In re Brenda K. WILEY, Debtor.

Brenda K. WILEY, for herself and on behalf of all others similarly situated, Plaintiff,

v.

Paul MASON, Paul Mason & Associates, Inc. d/b/a Creditors Bankruptcy Service, Busch Jewelry Company, and John Does 1–50, Defendants.

Bankruptcy No. 93 B 21024.
Adversary No. 98 A 00356.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 28, 1998.

**62**

Daniel Edelman, Cathleen Combs, James Latturner, Michelle Teggelaar, Edelman & Combs, Chicago, IL, John Roddy, Frederic Grant, Grant & Roddy, Boston, MA, Edward O'Brien, Nashua, NH, Lorraine Greenberg, Chicago, IL, for Plaintiff.

John Hynes, Clausen Miller, Chicago, IL, Timothy Zeiger, David Ringer, McKinley, Ringer, Zeiger, Dallas, TX, Terri Long, Sherman & Sherman, Chicago, IL, for Defendants.

Dean Harvalis, Chicago, IL, Asst. U.S. Trustee.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding relates to the bankruptcy proceeding filed by Brenda K. Wiley, ("Debtor" or "Plaintiff") under Chapter 7 of the Bankruptcy Code (the "Code"), 11 U.S.C. § 101 *et seq.* Debtor filed a Statement of Intentions which stated that she intended to reaffirm a debt to defendant Busch Jewelry Company ("Busch"). Subsequently, Debtor, Debtor's attorney Lorraine Greenberg ("Greenberg"), and Paul Mason & Associates, Inc., d/b/a Creditors Bankruptcy Service ("CBS"), acting on behalf of Busch, negotiated a reaffirmation agreement ("agreement"). The executed reaffirmation agreement was given by CBS to Greenberg with a request that she file it with the Bankruptcy Clerk, but she did not do so. Debtor received her discharge and her case was closed.

Despite the fact that her attorney never filed the agreement, Debtor made all payments pursuant to the agreement. Three years later, Debtor filed this asserted class action against Busch, CBS, and Paul Mason, the president of CBS (collectively "Defendants"). The parties indicated that Busch is now out of business, and no counsel appeared on its behalf.

### Background of Undisputed Facts and Pleadings

The following undisputed facts are shown by the pleadings and case record:

The related bankruptcy case was originally filed October 6, 1993, and was assigned to the undersigned Bankruptcy Judge. Debtor scheduled her debt to Busch. On January 21, 1994, a reaffirmation agreement was executed between Debtor and Busch, arranged through CBS. The reaffirmation agreement used a CBS form with a provision stating that, in the event Debtor exercised her right to rescind the reaffirmation agreement, the creditor would retain all payments made prior to rescission. That provision is attacked here as illegal.

This reaffirmation agreement was never filed with the Clerk of the Bankruptcy Court. On February 14, 1994, a discharge order was

entered in favor of Debtor. On March 18, 1994, an order was entered closing Debtor's bankruptcy case.

On August 7, 1997, Plaintiff filed a five-count amended complaint in the District Court for the Northern District of Illinois. The case was assigned to District Judge Alesia, and by his order was referred to this Court. The bankruptcy was reopened to consider this case which was then assigned an Adversary number and pends here.

Count I of the Complaint alleges a willful violation of 11 U.S.C. § 524(c), asserting that Defendants violated Bankruptcy Code provisions dealing with reaffirmation agreements. Count II alleges a willful violation by Defendants of the discharge order under 11 U.S.C. § 524(a)(2) by seeking to collect on discharged debts. Count III alleges a willful violation of the automatic stay by Defendants misrepresenting the rights of Plaintiff and class members in soliciting and obtaining illegal reaffirmation agreements.

· Count IV alleged that Defendants engaged in unfair and deceptive acts and practices in violation of state law. Count V asserted a state law claim of restitution on the theory that Defendants obtained money from Plaintiff and other class members in a manner contrary to equity and good conscience and under circumstances constituting unjust enrichment. Counts IV and V were earlier dismissed by order of District Judge Alesia, were not referred to this Court, and are not now pending.

The Complaint alleges that CBS acted, and continues to act, as an agent for a number of creditors, including Busch, by administering creditor claims against consumer debtors in bankruptcy here and elsewhere throughout the United States. Typically, CBS files a proof of claim in the bankruptcy proceeding, monitors the status of the case, and solicits reaffirmation agreements.

Plaintiff further alleges that Defendants had no intention of filing the reaffirmation agreement with the Bankruptcy Court Clerk in this case because they sought to hide the allegedly illegal provision contained therein. The Complaint also asserts that Defendants, over at least the past three years, have nego-tiated many agreements containing the same questioned provision and never filed them in any court. As a result of using those assertedly illegal reaffirmation agreements, Defendants are said to have derived substantial profits.

Plaintiff argues that, by utilizing illegal reaffirmation agreements and deliberately failing to file · them, Defendants have been and are ignoring and willfully violating Bankruptcy Code requirements governing and limiting permissible post-petition reaffirmation of debt, specifically those under 11 U.S.C. § 524(c). Moreover, by seeking to collect pre-petition debts from Plaintiff, it is asserted that Defendants violated the statutory discharge injunction contained in 11 U.S.C. § 524(a)(2). Finally by assertedly misrepresenting the rights of the Plaintiff class in soliciting and obtaining the above-described agreements, Defendants are alleged to have violated the automatic stay provisions of 11 U.S.C. § 362.

Of a number of motions filed, four are ruled on here: (1) Defendant CBS's Motion to dismiss Counts I, II, and III pursuant to Fed.R.Civ.P. 12(b)(6) (applicable herein pursuant to Fed. R. Bankr.P. 7012); (2) Defendant CBS's Motion for summary judgment on Counts I and II; (3) Plaintiff's Motion for class certification; and (4) Plaintiff's Motion under Fed.R.Civ.P. 12(f) to strike the CBS pleaded affirmative defenses. These motions were fully briefed. For reasons set forth below, they will be disposed of as follows: (1) Defendant CBS's motion to dismiss will be granted as to Count III and denied as to the remaining counts; (2) Defendant CBS's motion for summary judgment will be granted as to Count II and denied as to Count I; (3) Plaintiff's motion for class certification will be granted to the extent that a class will be certified under Count I for injunctive and declaratory purposes only under Fed. R.Civ.P. 23(b)(2) (Fed. R. Bankr.P. 7023), and otherwise will be denied; and (4) Plaintiff's motion to strike affirmative defenses will be granted in part and denied in part, leaving only the First and Second Defenses.

### *Jurisdiction*

When the matter was referred here by the District Court Judge, the parties were first

**64**

asked to brief whether or not the Bankruptcy Court has jurisdiction. The question arises because the bankruptcy case had been closed for more than three years and this lawsuit cannot benefit the bankruptcy estate or its creditors. With the aid of these briefings, it is concluded that jurisdiction lies over some issues presented in this case, most particularly over issues relating to use by Defendants of an assertedly illegal reaffirmation form, and also over the claim by Plaintiff that she has a right to recover payments made by her, but otherwise jurisdiction over other claims herein is doubtful.

██ Bankruptcy court jurisdiction extends to all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). If a proceeding does not arise under Title 11 of the U.S. Code or does not arise in or is not related to a case under Title 11, it is not appropriate for bankruptcy judicial determination. *See Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir.1994). "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *In re Markos Gurnee Partnership,* 182 B.R. 211, 220 (Bankr.N.D.Ill. 1995), *aff'd sub nom, State of Ill., Dept. of Revenue v. Schechter,* 195 B.R. 380 (N.D.Ill. 1996); *see also In re Spaulding & Co.,* 131 B.R. 84, 88 (N.D.Ill.1990) (citing *Matter of Wood,* 825 F.2d 90, 96 (5th Cir.1987)). "Arising in" jurisdiction encompasses administrative matters that arise only in bankruptcy cases, that is to matters not based on any right expressly created by Title 11 but without existence outside of bankruptcy. *Id.* "Related to" jurisdiction describes proceedings which affect the amount of property available for distribution or the allocation of property among creditors. *Id.* (quoting *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 749 (7th Cir.1989)). *See also In re Cary Metal Products, Inc.,* 152 B.R. 927, 934 (Bankr.N.D.Ill.), *aff'd,* 158 B.R. 459 (N.D.Ill. 1993), *aff'd sub nom, Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159 (7th Cir.1994) (citations omitted); *In re Spaulding & Co.,* 111 B.R. 689, 692 (Bankr.N.D.Ill.), *aff'd,* 131 B.R. 84 (N.D.Ill.1990); *In re Xonics, Inc.,* 813 F.2d 127, 133 (7th Cir.1987).

██ As discussed, this case concerns the alleged systematic use of a reaffirmation agreement form that may be illegal under 11 U.S.C. § 524(c), and also asserts violation of the discharge injunction under § 524(a)(2) and improper solicitation of payments on a pre-petition debt. Thus, jurisdiction is present to deal with the issue presented as to Defendants' apparent use of an illegal reaffirmation form, as that issue arises within this case and also in and under Title 11 U.S.C. Jurisdiction also arises in and under Title 11 U.S.C. over Wiley's claim to recover payments and punitive damages assertedly recoverable because the agreement was never filed with our Court Clerk as required by statute, or for any improper solicitation of payments. To that extent, the case presents a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (I).

██ However, the Complaint also seeks to have Debtor act as a class representative to collect under different theories on behalf of many debtors around the country asserted to be similarly situated. Such recovery for a class would not benefit the estate, nor would it affect the amount of property available for creditors in this case. Thus, while this Court certainly has core jurisdiction to enforce the provisions of the Bankruptcy Code and to consider a remedy sought by Debtor for herself if she were harmed by abuse of the reaffirmation process, it is not necessary to do so or permitted that this Court be the forum for recovery of money that would not be part of the bankruptcy estate or of this Debtor. Indeed, such claims do not arise in or relate to this bankruptcy case, even though the legal issues presented arise under the Bankruptcy Code. Therefore, neither core nor related jurisdiction is found for the expanded class relief sought by Plaintiff to create a damage fund.

## MOTION TO DISMISS

### Standards for a Motion to Dismiss

Defendants' motion to dismiss was brought under Fed.R.Civ.P. 12 (applicable in adversary proceedings by virtue of Fed. R. Bankr.P. 7012). In order to prevail on this

motion to dismiss, it must clearly appear from the complaint that the Plaintiff can prove no set of facts in support of her claims which would entitle her to relief. *McKown v. Dun & Bradstreet, Inc.*, 744 F.Supp. 1046, 1047 (D.Kan.1990) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Both pleaded facts and reasonable inferences drawn from pleaded facts must be considered in a light most favorable to the plaintiff. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).[1]

### Discussion of Counts I and II

As stated, Counts I and II of the Adversary Complaint allege violations of the reaffirmation procedures provided in the Bankruptcy Code under 11 U.S.C. § 524(c) and violations of the discharge order and resulting statutory injunction contained in § 524(a)(2). Plaintiff asks the Court to enjoin Defendants from continuing to use the assertedly improper form reaffirmation agreement, and also seeks damages against Defendants for their allegedly willful violations of the Bankruptcy Code.

Defendants argue that these first two counts must each be dismissed as no private right of action for damages exists under § 524 of the Bankruptcy Code. In response, Plaintiff points out that courts have allowed such matters to proceed, and Code § 105(a) allows entry of any order necessary or appropriate to carry out the provisions of Title 11, thus authorizing entry of orders protecting the discharge injunction.

A discharge in bankruptcy discharges a debtor from most pre-petition debts. 11 U.S.C. § 524 (*see* 11 U.S.C. § 523 for debts excepted from discharge). Reaffirmation creates a voluntary exception to the fresh start provisions of the Bankruptcy Code. *Matter of Duke*, 79 F.3d 43, 44 (7th Cir.1996). While the Code allows a debtor to reaffirm, that may be done only under the specific conditions set forth in 11 U.S.C. § 524(c).

*See In re Latanowich*, 207 B.R. 326, 334 (Bankr.D.Mass.1997). "By requiring a right to rescind, filing with the court, and an attorney's affidavit attesting that the debtor was fully informed, acted voluntarily, and that the agreement does not impose an undue hardship on the debtor, § 524(c) addresses the fairness of a completed reaffirmation agreement." *Duke*, 79 F.3d at 45.

In general, when a reaffirmation is neither filed nor presented to the court for appropriate approval, the reaffirmation agreement is void. *Id.* at 336. It is as if the reaffirmation never became effective or enforceable. *Id.* Thus, upon entry of the discharge order, a creditor remains enjoined from engaging in any acts to collect upon that discharged, non-reaffirmed debt. *Id.*

Several decisions have suggested that no private right of action for damages or sanctions exist under § 524. The few courts that have looked at this issue have compared the express sanction language of § 362(h) to § 524 and determined that, as § 524 contains no such express sanction language, no private right of action exists. Section 362(h) provides that an "individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." There is no similar provision in § 524. From that circumstance, one court reasoned that

> ... legislation similar to section 362(h) would be necessary to create a private right of action for punitive damages for violation of the discharge injunction. Perhaps it would be a good idea to clone section 362(h) in section 524, but that is a question for the Congress, not the judiciary.

*In re Costa*, 172 B.R. 954, 966 (Bankr. E.D.Cal.1994). Another opinion has held that "Section 524 does not expressly allow for damages, costs or attorney fees, or create a private right of action. This omission does not seem accidental where Congress did ex-

---

1. As stated, for purposes of a motion to dismiss, facts as pleaded are taken in a light most favorable to the Plaintiff. But unless these facts were admitted in Defendant's answer or summary judgment pleadings, they will not be deemed as true for purposes of the other motions discussed in this memorandum opinion.

pressly provide similar remedies in other sections." *Perovich v. Humphrey,* 1997 WL 674975, *3 (N.D.Ill.1997). However, that opinion also acknowledged that "the law in this area is unclear, and further acknowledged that damages have been awarded based upon § 524 after finding creditors in civil contempt of the discharge order." *Id.* at *4 (collecting cases).

Section 105(a) of the Bankruptcy Code does provide the court with authority to enforce the discharge order. *Latanowich,* 207 B.R. at 333. "Section 105(a) clearly provides the court with power to impose remedial sanctions and to ensure prospective compliance with the discharge injunction." *Id.* That provision also authorizes the court to enter punitive damages "which are simply another mechanism by which the court enforces its orders." *Id.*

As stated, in considering the Motion to Dismiss, it must be assumed that well-pleaded allegations with which Defendants are charged are true. Those include the allegations of soliciting debtors to sign reaffirmation agreements containing illegal provisions, deliberately failing to file such agreements to avoid the scrutiny of the bankruptcy court, and collecting upon such discharged debts. If such were established and no defense succeeded, Defendants may indeed be subject to some form of sanction or injunction, and Plaintiff might be able to claim her money back at the least. Plaintiff has therefore sufficiently stated a cause of action in Counts I and II, and the motion to dismiss those counts will be denied.

### Discussion of Count III

Count III of the complaint alleges that Defendants willfully violated the automatic stay provisions of § 362 by soliciting and obtaining illegal reaffirmation agreements. Plaintiff has clearly failed to state a cause of action in Count III. It is not a violation of the automatic stay for a creditor to solicit a reaffirmation agreement from a debtor so long as it is done in a non-coercive and non-threatening manner. *Matter of Duke,* 79 F.3d 43, 45 (7th Cir.1996). Therefore, solicitation of a reaffirmation agreement is not cause for violation of the automatic

stay provision regardless of whether the reaffirmation complied with the letter of the Code.

Plaintiff argues that soliciting the reaffirmation agreements prior to discharge and with intent to use the unfiled agreement to induce the debtor to pay upon a discharged debt violated the automatic stay. Section 362 provides that filing of a bankruptcy petition operates as a stay against any act to "collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a)(6). Plaintiff argues that, when a creditor fails to "abide by the strict requirements of the Bankruptcy Code" and when that creditor solicits "purported reaffirmation agreements without intending to ever file them," the creditor is engaging in "misleading and coercive acts to collect debts." Plaintiff's Opposition of Defendant's Motion to Dismiss at 10. Plaintiff has given no direct authority for this proposition and is incorrect in light of *Duke.* Solicitation of a reaffirmation agreement, whether subsequently filed or unfiled, is not a violation of the automatic stay without any additional coercive behavior on the part of the creditor. Coercive behavior has not been alleged here. Plaintiff has therefore failed to state a cause of action in Count III, which will be dismissed.

## MOTION FOR SUMMARY JUDGMENT

### Standards for a Motion for Summary Judgment

Summary judgment motions are governed by Fed.R.Civ.P. 56(c) and made applicable to bankruptcy proceedings under Fed. R. Bankr.P. 7056. Summary judgment is granted to avoid unnecessary trials when there are no genuine issues of material fact in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The moving party in a motion for summary judgment has the initial burden of demonstrating that there are no genuine issues of material fact and that judgment in its favor should be granted as a matter of law. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). An issue of material fact will prevent summary judgment if the issue is outcome determinative under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

As discussed below, Defendants are not entitled to summary judgment in their favor on Count I of the Adversary Complaint as the undisputed facts are sufficient to show that use of the form reaffirmation agreement likely violates 11 U.S.C. § 524(c).

However, Defendants are entitled to summary judgment in their favor on Count II of the Adversary Complaint. As discussed below, the undisputed facts show that Debtor made voluntary payments on a discharged debt with full knowledge that the agreement was not enforceable and with no coercion on Defendant's part. No violation of the § 524(a)(2) statutory injunction can be found under these circumstances.

***Undisputed Facts***

The following undisputed facts emerge from the filings by the parties under Local Bankruptcy Rule 402.M and N:

1. Plaintiff Brenda K. Wiley ("Wiley" or "Plaintiff") resides in the Northern District of Illinois. 402.M/402.N ¶ 1.

2. Defendant CBS is a Delaware corporation with a principal place of business at 9441 Lyndon B. Johnson Freeway, Suite 605, Dallas, Texas 75243. 402.M/402.N ¶ 2. Defendant Mason is the founder and CEO of CBS and presently is a 35% shareholder. Mark Bennett is Vice President of Operations of CBS. Don Hill is President of CBS. 402.-N(3)(b) ¶ 4. Mason and Hill are responsible for establishing and modifying the policies of CBS concerning reaffirmation agreements. 402.N(3)(b) ¶ 5.

3. CBS was formed in April 1993 and acts as an agent of creditors to perform a variety of administrative tasks in bankruptcy cases.

402.M/402.N ¶ 3.[2] These tasks include matters pertaining to reaffirmation 402.N(3)(b) ¶ 6.

4. CBS acts as an agent for a number of creditors, mostly national retail companies such as Dillard Department Stores, Foley's, J.C. Penney's, Pier 1 Imports, and Neiman–Marcus. In appropriate cases, CBS administers the creditors' claims against consumer debtors in the bankruptcy. Where appropriate, CBS files a proof of claim in the bankruptcy proceeding, monitors the status of the case, and solicits reaffirmation agreements. CBS also negotiates reaffirmation agreements within parameters set by its clients. Complaint/Answer ¶ 6. CBS's role in the reaffirmation process involves negotiations to determine, by agreement, the status of the obligation. 402.M/402.N ¶ 13. In some cases, payments of creditors' accounts are sent to CBS. These payments are sent to a post office box opened and managed by CBS. 402.N(3)(b) ¶ 8. Some payments received by CBS go into a trust account for distribution to creditors. 402.N(3)(b) ¶ 9.

5. As agent for Busch and other creditors, CBS has filed reaffirmation agreements with every bankruptcy judge for the Northern District of Illinois. 402.M/402.N ¶ 17. As agent for various creditors, it has filed reaffirmation agreements with the same or similar language as the reaffirmation at issue in almost every judicial district and in cases before almost every bankruptcy judge in the United States. 402.M/402.N ¶ 18.

6. CBS's intention is that all executed reaffirmation agreements be filed with the court where the bankruptcy is pending. It routinely requests debtors' counsel to file the fully executed agreement with the bankruptcy court and return a fully executed document to CBS. However, CBS does accept and process payments on accounts regardless of whether it has received from a debtor's counsel a file-stamped copy of the reaffirma-

---

**2.** Plaintiff denied the truth of this statement, citing a portion of the deposition of Paul Mason. When that portion was reviewed, however, it confirmed the accuracy of Defendant's statement of undisputed fact. While it is not appropriate for the court to weigh evidence on a motion for summary judgment, *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the court does have an obligation to ensure that evidence alleged to support or contradict an asserted fact does actually support or contradict that fact. *See, e.g., Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 570 n. 4 (7th Cir.1989).

tion. 402.M/402.N ¶ 9; 402.N(3)(b) ¶ 17; Don Hill ("Hill") Affidavit ¶ 2; Paul Mason ("Mason") Deposition at 58–9; Hill Dep. at 26.

7. CBS's policy with regard to unfiled reaffirmation agreements is that no referral to any outside collection entity is made unless and until a filed reaffirmation agreement is obtained. 402.M/402.N ¶ 15. CBS only files reaffirmation agreements after the attorney for the debtor has executed the declaration required by 11 U.S.C. § 524(c)(3). 402.M/402.N ¶ 18.

8. CBS acknowledges that a proposed reaffirmation agreement is not enforceable unless all the requirements of 11 U.S.C. § 524(c) are fulfilled which includes filing the proposed reaffirmation with the bankruptcy court prior to discharge.[3]

9. CBS's policy with regard to proposed reaffirmation agreements which are fully executed by both counsel and the debtor and which are returned to CBS is as follows:

(i) Upon receipt of the fully executed instrument from debtor's counsel, unless the correspondence from debtor's counsel affirmatively indicates that the instrument was filed in accordance with 11 U.S.C. § 524(c), either by enclosing a file-marked copy of the agreement or by affirmatively indicating filing in the correspondence, CBS mails a copy to the bankruptcy court for filing.

(ii) If correspondence from the debtor's counsel affirmatively indicates that the instrument was not filed, and CBS is unable to file a copy prior to the discharge date, then CBS's policy recognizes that the account has been discharged as a personal obligation of the debtor.

(iii) Since CBS's inception, unless the debtor's attorney stated that he or she refused to effectuate the debtor's stated intention and comply with 11 U.S.C. § 524(c) as CBS requested,

CBS has treated the account internally as a reaffirmed account, subject to rescission within the statutory period. However, no account is referred to any outside collection agency unless a file-marked agreement is obtained. 402.M/402.N ¶ 16.

10. On October 6, 1993, Plaintiff filed a voluntary petition for relief in the Northern District of Illinois under Chapter 7 of the Bankruptcy Code, case number 93 B 21024. Plaintiff was represented by Lorraine M. Greenberg ("Greenberg") & Associates in her bankruptcy. 402.M/402.N ¶ 4.

11. Plaintiff listed on her schedules an obligation to Busch for credit extended to finance the purchase of merchandise. Complaint/Answer ¶ 11. Wiley's "Statement of Intentions" stated that the jewelry securing the Busch claim would be retained and the debt would be reaffirmed. 402.M/402.N ¶ 6.

12. In Wiley's bankruptcy, CBS acted as an agent for Busch, a creditor with a secured claim valued by Wiley at $514. 402.M/402.N ¶ 5. CBS entered into negotiations with Greenberg on reaffirming the Busch debt. On or about December 28, 1993, the negotiations resulted in an agreement that Wiley would retain the collateral, reaffirm only the secured value of the debt, which the parties agreed was $250, and pay the reaffirmed debt at $25 per month without interest. 402.M/402.N ¶ 7.

13. Greenberg was presented with the proposed form reaffirmation agreement to review and approve, and she was expressly requested to file the fully executed reaffirmation agreement with the bankruptcy court and return a file-marked copy to CBS. 402.M/402.N ¶ 10; 402.M/402.N ¶ 19.

14. The agreement form used in this case and used generally by CBS purported to provide that, if the Debtor exercised her right to rescind, Busch or other creditors would retain all payments made prior to rescission. Complaint/Answer ¶ 16. Specifi-

---

3. Plaintiff disputes this by arguing that CBS treats unfiled agreements as enforceable, but *there is no actual dispute.* CBS acknowledges that reaffirmations must follow the specific procedures of § 524(c) in order to be valid. However, it also accepts payment on accounts where no

enforceable reaffirmation agreement has been filed by a debtor's counsel as requested. CBS recognizes that, where no enforceable reaffirmation is on file, the debt is discharged. 402.M/402.N ¶ 13.

cally it provided: "If this Agreement is rescinded, Debtor(s) agree(s) that Creditor shall retain all payments made prior to rescission." This language is similar if not identical to language used in the forms provided in the 1989 and 1994 editions of the book, *Winning Bankruptcy Strategies for Consumer Creditors,* by William R. Mapother. 402.M/402.N ¶ 31. This provision is part of the form on which the agreement with Wiley was prepared. Complaint/Answer ¶ 16.

15. The proposed reaffirmation agreement was executed by Plaintiff on January 21, 1994. Greenberg executed the attorney's declaration on January 24, 1994. 402.M/402.N ¶ 8. Such declaration attested that Greenberg represented Wiley during the negotiation of the reaffirmation agreement, and that the reaffirmation represented a fully informed and voluntary agreement by Wiley. It also stated that Debtor represented to Greenberg that the reaffirmation would not impose an undue hardship. Def. Ex. 3C.

16. Despite CBS's request that Greenberg file the signed reaffirmation agreement, she did not, nor did she immediately return it to CBS. 402.M/402.N ¶ 8. As a lawyer for debtors, Greenberg has a policy of not filing reaffirmation agreements on behalf of creditors so as to leave her clients unbound by the reaffirmation should the creditor fail to file the agreement and the debtor decide to give up the security. As a result, her clients have no personal obligation to continue payments. Greenberg Dep. at p. 127.[4] However, she eventually returned the signed agreement to CBS. When Greenberg mailed the unfiled executed reaffirmation agreement back to CBS, sometime on or after February 4, 1994, she obviously knew that it had not been filed.

17. Wiley sent a $25 payment to CBS which was posted on February 4, 1994, the same day that Greenberg mailed to CBS the fully executed reaffirmation instrument. Greenberg's transmitted correspondence, dated February 4, 1994, referred to the instrument as a reaffirmation and did not indicate that no copy had been filed or that requirements of 11 U.S.C. § 524(c) had not been met. 402.M/402.N ¶ 8.

18. On February 14, 1994, a discharge order was entered in Wiley's case discharging the debt to Busch. Complaint/Answer ¶ 12. However, Doris Casebolt, CBS's client representative assigned to Plaintiff's case, assumed that Plaintiff's agreement had been filed with the Clerk as requested. 402.-N(3)(b) ¶ 20.

19. CBS did not refer Wiley's account to any other entity for collection. Further, CBS made no post-discharge demands for payments to Plaintiff. 402.M/402.N ¶ 25. The only statement made by CBS to Plaintiff concerning the enforceability of the proposed reaffirmation agreement was the statement appearing on the face of the instrument: "This Agreement will not be enforceable until the requirements of 11 U.S.C. § 524(c) have been met." 402.M/402.N ¶ 26. CBS did not affirmatively represent to Plaintiff either the validity or the enforceability of the proposed Busch reaffirmation. 402.M/402.N ¶ 27.

20. Wiley's initial $25 post-petition payment was made on the Busch account even prior to the time CBS was aware that the proposed reaffirmation agreement had been executed by Plaintiff or by her attorney. 402.M/402.N ¶ 28.[5] Each additional payment to CBS on the Busch account was made without any demand, reminder or coercion by

---

4. Greenberg's statement that she does not file reaffirmation agreements came from outside the parties' 402.M and 402.N filings. Such statements of material fact reflect an attempt to "streamline the resolution of summary judgment motions" and make parties' obligations explicit. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir.), *reh'g denied,* (1994). However, they do not and cannot change the requirements under Fed. R. Bank. P. 7056 (incorporating Fed.R.Civ.P. 56). Summary judgment requires the court to review the entire record to determine whether there is a genuine issue of material fact, and local rules merely assist in this process. *Waldridge,* 24 F.3d at 921–22. That requires that all submitted pleadings, exhibits, and depositions be reviewed.

5. Plaintiff denies this paragraph only to the extent it "implies that Wiley made the payment on her own initiative." As nothing in the paragraph of alleged fact indicates what prompted Wiley to make a payment on her account, it is deemed admitted.

**70**

CBS. 402.M/402.N ¶ 29.[6] Eventually she made a total of ten payments of $25, thus paying the full $250 provided under her reaffirmation agreement.

21. There are several details that the parties dispute. However, none of those details are critical to deciding the summary judgment motion.

## Discussion
### Count I

■ Count I rests on CBS's common use of a form that does not have a required provision in lawful form for rescission, as required by 11 U.S.C. § 524(c)(2). The undisputed facts support Count I and that clearly defeats the defense motion for summary judgment on that Count.

[10] At the heart of the Bankruptcy Code lie the provisions regarding discharge. *Latanowich*, 207 B.R. at 332. The bankruptcy court's authority to enforce the discharge order arises out of § 105(a), which gives the court the power to ensure compliance and to impose sanctions. *Vasquez v. Sears Roebuck & Co.*, slip op. at 8 (Bankr.N.D. Ill. June 17, 1998). "Reaffirmation of a dischargeable debt may impair a bankruptcy debtor's fresh start." *Matter of Nidiver*, 217 B.R. 581, 583 (Bankr.D.Neb.1998). As a result, reaffirmation agreements must comply with the strict requirements of section 524. "If a reaffirmation agreement fails to comply fully with § 524, it is void and unenforceable." *In re Turner*, 208 B.R. 434, 437 (Bankr.C.D.Ill. 1997).

There is no dispute that Wiley received a discharge from the Busch debt when the discharge order entered on February 14, 1994. There is likewise no dispute as to whether a valid reaffirmation agreement was ever filed with the bankruptcy court; it was not. In order for a reaffirmation agreement

to be considered valid, it must fully comply with the statutory requirements of § 524(c) and (d). "These statutory requirements exist to prevent debtors from being coerced into signing reaffirmation agreements and to enable them to be fully aware of the consequences of the agreement." *In re Noble*, 182 B.R. 854, 857 (Bankr.W.D.Wash.1995) (citing *In re Johnson*, 148 B.R. 532, 539 (Bankr. N.D.Ill.1992)).

■ A reaffirmation agreement is only enforceable if:

(1) the agreement was made in advance of the debtor's discharge; (2) the agreement contains a clear and conspicuous statement advising the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after the agreement is filed with the court, whichever occurs later; (3) the agreement has been filed with the court; (4) the debtor has not rescinded the agreement; (5) the debtor has been warned by the bankruptcy judge as to the effects of the agreement; (6) the court finds that the agreement does not impose an undue hardship on the debtor; and (7) the court finds that the agreement is in the debtor's best interest.

*Noble*, 182 B.R. at 856–57 (citing *Johnson*, 148 B.R. at 539; 11 U.S.C. § 524(c)(1)-(6); *In re Ellis*, 103 B.R. 977, 980–981 (Bankr. N.D.Ill.1989); *In re Hitt*, 137 B.R. 401, 403 (Bankr.D.Mont.1992)).

While the Busch reaffirmation was executed prior to the discharge order, the agreement was never filed with the court. The contention by Plaintiff that the non-filing was planned by CBS to keep the Court from reviewing terms of the agreement does not comport with the law. Under 11 U.S.C. § 524(c)(6) and § 524(d), the bankruptcy judge does not review a filed agreement unless the debtor is *pro se*.

6. Plaintiff also states that Busch sent monthly statements to Wiley. However, alleged statements of fact will only be deemed as such if they are either contained and admitted within a 402.M, 402.N, or 402.N(3)(b) statement, contained and admitted within the complaint and answer, are part of an exhibit used to support the statements of material fact, or are stipulated to admitted by the parties. Thus, the statement about Busch cannot be deemed an undisputed fact. Further, any activity by Busch does not relate to issues concerning CBS activities. If Busch sent monthly statements, that would not show that CBS sent statements or some other solicitation or coercion to induce Wiley to make payments. Busch was not shown to be CBS's agent.

However, the reaffirmation agreement stated that, in the event that Wiley exercised her right to rescind the agreement, all payments to that point would be retained by the creditor. While this language used in the reaffirmation form has apparently been commonly used by creditors, and substantially similar if not identical reaffirmation agreements have been filed before this Court and throughout the national bankruptcy court system, it still may be scrutinized for compliance with the Bankruptcy Code. A widespread practice does not amend the Bankruptcy Code; only Congress can do that.

■■■■■ Plaintiff argues that the statement contained in paragraph 4 of the reaffirmation agreement used by CBS is invalid as it restricts Debtor's statutory right of rescission. Rescission of a contract is defined as to "abrogate, annul, avoid, or cancel a contract; particularly, nullifying a contract by the act of a party ... [and] 'rescission' amounts to the unmaking of a contract or an undoing of it from the beginning, and not merely a termination...." Black's Law Dictionary, 6th ed. at 1307. Therefore, by definition, when a reaffirmation agreement is rescinded, all payments must be returned to the debtor. *See In re McAuliffe*, 180 B.R. 336, 336–37 (Bankr.D.Me.1995) (holding that as part of rescission, debtor was entitled to recover from creditor all payments made under the reaffirmation).

■■■■ Therefore, the reaffirmation agreement form used in this case and always used by CBS throughout the United States appears on its face to violate § 524. Reaffirmation agreements which limit or otherwise condition a debtor's statutory right to rescind are not proper. *Matter of Nidiver*, 217 B.R. 581, 584 (Bankr.D.Neb.1998). As stated above, rescission means the parties are returned to their pre-reaffirmation positions. Any payments made on the rescinded reaffirmation agreement belong to the debtor. *McAuliffe*, 180 B.R. at 336–37. As a result, the reaffirmation agreement form always used by CBS nationwide appears to be invalid and unenforceable. Does the questioned clause prevent any enforcement, or only prevent CBS or its principals from holding back

payments received before rescission? That issue will warrant further briefing.

■■■■ Regardless of whether Plaintiff had any knowledge of the illegality of the rescission provision, she was imputed to be aware through her counsel that she was making voluntary payments on an unfiled reaffirmation agreement that was completely unenforceable for that reason. This is the basis on which summary judgment will be entered for Defendants on Count II. *See* discussion on Count II below. She is not entitled to recover back those voluntary payments or punitive damages for their payment and acceptance. Accordingly, while summary judgment will be denied in Count I, Plaintiff's prayer for damages in that Count will be stricken. Wiley cannot obtain damages because she voluntarily made payments on an unfiled agreement; therefore she cannot obtain damages for making those same payments because the unfiled agreement contained an unenforceable clause.

## Count II

Plaintiff seeks in Count II to recover her payments and related punitive damages because CBS accepted her payments even though the agreement was not filed with the Count as required by 11 U.S.C. § 524(c)(3) and was therefore unenforceable.

■■■■ Although an invalid or unfiled reaffirmation agreement is generally not enforceable, debtors may always make voluntary payments on discharged debts. 11 U.S.C. § 524(f); *Matter of Hellums*, 772 F.2d 379, 381 (7th Cir.1985). Section 524(f) provides that nothing contained in the statutory provisions on reaffirmation prevents a debtor from "voluntarily repaying any debt."

By allowing for the "voluntary" repayment of debts, Congress has not provided a lot of guidance. One kind of "voluntary" repayment is one that is spontaneous, that is, uninduced by anything other than the actor's own conscience, or, perhaps, by some inducement provided by a third party, not the creditor ... On the other hand, the word "voluntary" is frequently employed to describe acts that are induced by exogenous forces which engage the actor's inter-

est in experiencing gain or avoiding loss. This is the sense in which the word is most often used in the law of contracts. When voluntariness in this sense is being inquired into and the idea of duress is introduced into the situation, then the question of whether an act is voluntary becomes more than a little murky. An example of this murkiness is provided by cases in which a court must determine whether a search resulted from the "voluntary consent," a seemingly redundant phrase, of a person searched ... The court therefore holds that the provisions of § 524(f) do not validate repayments of discharged debts that are in any manner induced by the acts of the creditor.

*Van Meter v. American State Bank*, 89 B.R. 32, 34 (W.D.Ark.1988). The voluntariness of a payment is to be looked at objectively. The focus is on the conduct of the creditor receiving the payments.

> The inquiry should be whether the repayment is free from the influence or coercion of the creditor which, in turn, may be established by showing: (1) the creditor took no misleading or coercive action and (2) the creditor reasonably assumed that the debtor's payments were voluntary. The court should not be required to inquire into the psyche of the debtor to ascertain the forces which motivated the payments.

3 Norton Bankruptcy Law and Practice 2d § 48:3, *Informal Acts to Collect* (1997).

As established by the undisputed facts, CBS never committed any post-discharge act which would constitute inducement of payment of a discharged debt. It never contacted the debtor or sent statements requesting payment. Rather, CBS's actions consisted solely of receiving payments voluntarily sent by Wiley and processing those payments. This does not constitute inducement. In *Latanowich*, the judge found that, because the agreement was unenforceable, Sears was "enjoined from engaging in any act to collect it as a personal liability of the Debtor." Because Sears billed the debtor, assessed interest, and accepted payments on the prepetition debt, Sears violated the discharge order.

*Latanowich*, 207 B.R. at 336. Defendants here did not engage in any such behavior.

A debtor who retains property securing the debt without giving a valid reaffirmation agreement has no personal liability, as the debtor's personal debt is discharged in a Chapter 7 bankruptcy. However, where no valid reaffirmation agreement has been filed with the court, following entry of the discharge "the creditor can simply initiate proceedings to foreclose or exercise self-help procedures to reach its collateral. The automatic stay no longer exists ... This is true regardless of whether the debtor is current on the reaffirmation agreement or not." *In re Hasek*, No. 96 B 23346, Slip op. at 6 (Bankr.N.D. Ill., June 26, 1997) (citing *In re Bell*, 700 F.2d 1053 (6th Cir.1983)).

Plaintiff argues that, because the reaffirmation agreement was invalid, CBS should not have collected payments of any kind from Wiley and further argues that any payment which Wiley sent to CBS based upon that invalid reaffirmation must be returned to Wiley.

However, Wiley made her payments pursuant to an unfiled reaffirmation agreement that her attorney knew was unenforceable. She therefore made the payments voluntarily. Indeed, the attorney did not as a matter of her office policy file reaffirmation agreements signed by her clients because omission to file made them unenforceable, thereby intending to retain an option open for her clients either to pay voluntarily and keep the collateral or to stop payments at any time and surrender the collateral. Greenberg Dep. at 127.

Moreover, despite the CBS request that she file the agreement and return a copy to CBS prior to January 18, 1994, the earliest that Greenberg mailed the unfiled reaffirmation to CBS in Texas was February 4, 1994, the date the letter from Greenberg to CBS was signed. Greenberg's letter gave no indication of her refusal or omission to file any copy of the signed agreement as CBS had requested.

Greenberg clearly knew that the reaffirmation would never be filed by her and that her client thus had no legal obligation at that

time to repay the debt to Busch. Nor did she inform CBS of her intent when she mailed the signed document to it, representing that it constituted a "reaffirmation."

As stated, Greenberg did not mail the unfiled reaffirmation to CBS in Texas until sometime on or after February 4, 1994. The discharge was entered on February 14, 1994. Greenberg knew that CBS had requested she file the reaffirmation agreement, but she gave it no indication in her cover letter that she would refuse to file the agreement. This is not to say that Greenberg had an obligation to file the reaffirmation agreement.[7] But these facts establish that, although Greenberg knew that the agreement would not be filed, she did not inform CBS of that fact.

 Greenberg's knowledge that the reaffirmation agreement was not to be filed must be imputed to her client Wiley. "Knowledge of an attorney is treated as knowledge of, or at least knowledge imputed to, the client, notwithstanding whether the attorney has actually communicated such knowledge to the client." *Yugoslav–American Cultural Center, Inc. v. Parkway Bank & Trust Co.*, 289 Ill.App.3d 728, 737, 224 Ill.Dec. 840, 846, 682 N.E.2d 401, 407–08 (Ill.App.Ct.1997) (citations omitted); *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 273–74 (N.D.Ill.1997); *see generally, Frey v. Fraser Yachts*, 29 F.3d 1153 (7th Cir.1994). Thus, based upon this imputed knowledge, Wiley knew she had no legal obligation to repay this discharged debt when she sent the first $25 payment. Yet Wiley continued to send all ten of her promised payments to CBS because she wanted to keep the jewelry securing her reaffirmed debt.

It is undisputed that CBS in no way contacted Wiley subsequent to the negotiations concerning the reaffirmation agreement. No monthly statements or other collection efforts were made. Wiley sent monthly payments to CBS, and CBS processed those payments. The knowledge that no valid

reaffirmation was in place can be imputed to Wiley. As a result, Wiley knew she had no obligation to make such payments yet proceeded to do so. Thus, her monthly payments to CBS were entirely voluntary.

 Section 524 of the Bankruptcy Code is a shield for debtors against improper reaffirmation procedures or pressures, not a trap to be sprung against creditors after unsolicited voluntary payments are made and the debtor seeks refunds along with punitive damages.

Defendants CBS and Mason have successfully demonstrated that no material issues of fact remain outstanding and that they are entitled to judgment as a matter of law on Count II. Plaintiff cannot demonstrate a violation by these Defendants of the discharge order merely because the agreement was not filed under 11 U.S.C. § 524(c)(3), and judgment will be granted in favor of Defendants as to Count II.

## *MOTION FOR CLASS CERTIFICATION*

### *Standards for Class Certification*

It is clear that a bankruptcy court may entertain a claimant class action. *Matter of American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir.1988). Although debtors' class actions are uncommon, they have also been recognized. *In re Whittaker*, 882 F.2d 791 (3rd Cir.1989) (affirming lower court decisions where debtor class action was maintained by debtor against an electric utility company, where debtor did not seek monetary damages for the unnamed class members).

For purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 333 n. 3 (N.D.Ill.1997). Merits of claims generally are not to be examined as part of the class claim analysis, but the

7. The Code "does not specify who can file a reaffirmation agreement, i.e., who can bring it to the courthouse ... Creditors who obtain reaffirmation agreements are well advised to file the

agreements themselves to assure that this requirement is met." *In re Kamps*, 217 B.R. 836, 843–44 (Bankr.C.D.Cal.1998).

"boundary between a class determination and the merits may not always be easily discernible." *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 598–99 (7th Cir.1993), *cert. denied*, —— U.S. ——, 117 S.Ct. 305, 136 L.Ed.2d 222 (1996). In order to resolve questions of typicality or whether common questions predominate, it is sometimes necessary to determine the nature of applicable law. *See Retired Chicago Police*, 7 F.3d at 598–99 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); and *Blaz v. Galen Hospital Illinois, Inc.*, 168 F.R.D. 621, 624–25 (N.D.Ill.1996).

The burden is on named plaintiff to demonstrate that all requirements for class certification are satisfied. *Retired Chicago Police*, 7 F.3d at 596.

However, the court has an independent duty to scrutinize appropriateness of class certification, and is not limited to arguments made by parties opposing certification. *See In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 (7th Cir.1979), *cert. denied*, 444 U.S. 870 (1980); *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1213–14 (6th Cir.1997); *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 317 n. 4 (N.D.Ill.1995).

 Plaintiff has moved for certification of a class of individual debtors with Wiley as their representative. Although, as indicated above, Count III should be dismissed and summary judgment is warranted in favor of Defendants as to Count II, all three counts must first be analyzed in considering the motion for class certification. *Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir.1992) (finding class determination must be made prior to any dispositive ruling on the merits). That has been done here.

The main reason for requiring decision on class certification prior to or at the same time as rulings on the merits is to protect defendants. *Id.* If a class action is dismissed or ruled upon prior to certification of the class, only the named plaintiff is bound by the ruling. *Benfield v. Mocatta Metals Corp.*, 1993 WL 148978, *2 (S.D.N.Y.1993). Thus, any member of the class action could bring additional litigation against the defendant. If a class is certified prior to dismissal of the action, class members who do not opt out would be bound by that ruling. In addition, Fed.R.Civ.P. 23(c) (Fed. R. Bankr.P. 7023) provides that determination as to whether a class might be maintained should be "as soon as practicable after the commencement of an action brought as a class action." However the order certifying the class action "may be conditional, and may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1).

 The procedures for class certification are governed by Fed.R.Civ.P. 23 (applicable herein pursuant to Fed. R. Bankr.P. 7023) which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). A court has broad discretion to determine whether class certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993) (citing *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1283 (7th Cir.1985)). The party seeking certification carries the burden of demonstrating propriety of class treatment. *Id.* (citing *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984)). In this case, as discussed below, only Count I supports class treatment, and such treatment is only warranted for limited injunctive and declaratory relief under Fed.R.Civ.P. 23(b)(2) (Fed. R. Bankr.P. 7023).

### 1. Numerosity

The first hurdle is numerosity. As stated, certification of a class is only appropriate where a class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). While the exact number of the class is not required to be pled, in the Sev-

enth Circuit parties "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (citing *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976)); *Roe v. Town of Highland*, 909 F.2d 1097, 1100 (7th Cir.1990).

Here, Plaintiff has asserted that, "[b]ased on the fact that CBS has represented creditors in over 1 million bankruptcy proceedings and the use of a form reaffirmation agreement, the members of the class are so numerous that joinder of all members is impracticable." Amended Complaint at ¶ 30. As discussed above in the context of the motion for summary judgment, CBS has filed a reaffirmation agreement with the same or similar language as the reaffirmation at issue in almost every district and before almost every bankruptcy judge in the United States. 402.M/402.N ¶ 18. Defendants do not dispute that numerosity exists.

### 2. Commonality

Under Fed.R.Civ.P. 23(a)(2), class members are required to share common issues of law and fact. *Tylka v. Gerber Products Co.*, 178 F.R.D. 493, 496 (N.D.Ill.1998); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). However, minor factual variation among the class is insufficient to defeat a class action. *Rosario*, 963 F.2d at 1018. "If 'at least one question of law or fact [are] common to the class,' then commonality is satisfied." *Tylka*, 178 F.R.D. at 496; *McKenzie v. City of Chicago*, 175 F.R.D. 280, 286 (N.D.Ill.1997). "Further, where the defendant directs standardized conduct toward the class, commonality is typically found." *Tylka*, 178 F.R.D. at 496–97.

Here, Defendants argue that commonality is lacking because the class plaintiffs include debtors with filed and unfiled reaffirmation agreements, secured and unsecured debt, paid and unpaid agreements, representation and no legal counsel, and Illinois residency and residency out-of-state. Indeed, those issues and variations do foreclose commonality as to claims asserted for refunds of payments and damages for asserted misuses. Events which may give rise to particular monetary damage claims and possible defenses to each are necessarily so diverse as to eliminate any possibility of commonality, and a class cannot be certified to deal collectively with such claims.

However, there is clearly one common area of fact and related law: The use by CBS of a form reaffirmation agreement which contains an unenforceable and illegal provision. Through consistent use of that form, CBS negotiates with debtors either individually or through the debtors' attorneys. Commonality rests on CBS's admission that it has used and continues to use a form reaffirmation agreement which on its face violates Bankruptcy Code § 524(c)(2) by purporting to eliminate any chance for complete rescission. In this regard, the requirement of commonality has been met.

Thus, commonality certainly exists as to Count I of the Adversary Complaint to the extent that Defendants have used and continue to use an illegal form reaffirmation agreement. However, commonality is not demonstrated for circumstances that might give rise to damage claims in Count I, or for any purposes in Counts II and III. The latter counts go to whether Defendants violated the discharge order and the automatic stay by collecting on and negotiating a reaffirmation agreement. As discussed in the context of the motion for summary judgment, this Plaintiff made voluntary payments. Some class members may have made payments under similar circumstances; some may have not. Some class members may have requested rescission; some may have not. Commonality has not been shown for Counts II and III, or for class damage claims in Count I.

### 3. Typicality

Rule 23(a)(3) requires that claims or defenses of the representative parties be typical of the claims of defenses of the class. However, the representative's claim need not be identical to claims of the class. Indeed, even where facts of the representative's case are unique, class certification may still be appropriate where the legal theory involved is the same. *Demitropoulos v. Bank One Milwaukee, NA,* 915 F.Supp. 1399, 1418

(N.D.Ill.1996). "[T]he typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Retired Chicago Police Ass'n*, 7 F.3d at 596–97 (citing *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). Moreover, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff and those of other class members." *Id.* (citing *De La Fuente*, 713 F.2d at 232).

Wiley, through her counsel, had knowledge that the unfiled reaffirmation agreement was unenforceable. Therefore, as discussed earlier, her payments were voluntary. Nonetheless, Wiley signed what now appears to be an illegal and unenforceable reaffirmation agreement, the same form agreement that CBS admits it continues to use throughout the United States. Whether Wiley or her counsel or any other class member was aware of the illegal rescission provision contained in the reaffirmation agreement is irrelevant to the issue of class certification. Wiley's claim seeking to prevent use of that form is typical of the class because CBS used with her the same illegal reaffirmation agreement it admits offering to debtors throughout the country. Wiley's complaint in this regard arises "from the same event or practice or course of conduct that gives rise to the claims of other class members." As a representative party of those many debtors offered the same form, Wiley's claim is typical of the class. The burden of typicality has therefore been met with regard to the form issue.

#### 4. Adequacy of representation

Finally, Rule 23(a)(4) requires that the class representative must "fairly and adequately protect the interest of the class." Adequacy of representation contains two parts: (1) "the adequacy of the named plaintiff's counsel"; and (2) "the adequacy of representation provided in protecting the differ-

ent, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n*, 7 F.3d 584, 598 (citing *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986) (en banc)). Competency and qualification of counsel may be demonstrated by a past history of representation of plaintiffs in other class actions and a thorough understanding of the case. *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 319 (N.D.Ill.1995); *In re Coggin*, 155 B.R. 934, 938–939 (Bankr.E.D.N.C.1993). Further, a named representative cannot protect the unique interests of the class if the representative has antagonistic or conflicting claims with the class members. *Retired Chicago Police Ass'n*, 7 F.3d at 598 (citing *Rosario*, 963 F.2d at 1018).

Defendants argue that "there are serious concerns regarding the adequacy of representation in this case." Defendants' Response in Opposition to Certification at 10. Many of these "concerns" go toward adequacy of Plaintiff's class counsel. Edelman & Combs. Defendants argue that (1) Wiley was approached about filing this class action; (2) a representative of the Edelman firm went through Wiley's attorney's files; (3) Wiley asserts attorney-client and work-product privileges as to conversations concerning the negotiation and execution of the reaffirmation agreement; (4) Wiley's bankruptcy attorney Greenberg believes she is co-counsel on this and other cases with the Edelman firm; and (5) Greenberg has some form of fee sharing arrangement for this case and other class actions.

Assuming *arguendo* that these assertions may be true, none are sufficient to refute the competency or adequacy of class counsel. It appears that Wiley was approached by one of her counsel concerning the filing of this action. However, it also appears that Wiley's bankruptcy counsel, Greenberg, was aware of potential problems concerning reaffirmation agreements, reviewed her files for unenforceable and illegal reaffirmation agreements, and asked Edelman & Combs assist her. Upon finding the illegal and original unfiled reaffirmation agreement in Wiley's file, Greenberg notified Wiley. Defendants also fail to cite any authority to show that this

circumstance disqualifies class counsel or to explain how Wiley's assertion of attorney-client privilege prevents her or her attorneys from adequately representing the class.

The attorneys with Edelman & Combs have significant experience with class actions. Several of their attorneys have published treatises, books, and articles concerning class actions and consumer fraud. The firm's experience in the area is extensive. Motion for Class Certification Ex. G. Defendants' objections regarding the adequacy of class counsel are unfounded.

Defendants made other arguments touching on the adequacy of Wiley as the class representative, namely that (1) she did not authorize the filing of the class action complaint; (2) she has no information as to CBS's alleged scheme to collect upon illegal reaffirmation agreements; and (3) she chose to retain possession of her collateral, allegedly puts her at odds with potential class members who had unsecured debts or who may wish to rescind or contest the agreement.

First, Wiley did authorize filing of the class action. Defendants seize upon a portion of Wiley's deposition which at one point stated that she did not authorize filing of the class action. However, as other parts of deposition clearly indicated, Wiley reviewed and consented to the Complaint prior to its being filed. Wiley Deposition, pp. 74, 87. Second, a class representative is not required to hold specialized legal knowledge concerning the litigation. *Gammon,* 162 F.R.D. at 318 (citing *Eggleston v. Chicago Journeymen Plumber's Local Union No. 130 U.A.,* 657 F.2d 890, 896 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982)). Rather, a class representative may demonstrate interest by showing minimal knowledge of the basic facts of the law suit, by demonstrating general knowledge, and by participating in discovery. *In re Discovery Zone Securities Litigation,* 169 F.R.D. 104, 109 (N.D.Ill.1996). Wiley clearly indicates that she has knowledge of the basic facts of the lawsuit and has participated in discovery. Wiley Deposition, pp. 31, 74, 80–82, 88–89, 93.

Finally, Wiley's voluntary payment and retention of her collateral does not create a conflict with other class members with respect to the narrow class to be certified involving the agreement form. For reasons earlier stated, Wiley cannot recover her voluntary payments, and therefore she cannot represent other debtors who might have such a right. However, while the class complaint requests damages through a refund of all payments made pursuant to all illegal reaffirmation agreements used anywhere and related punitive damages and attorneys' fees, it also seeks any other appropriate relief, which includes declaratory and injunctive relief. The fact that Wiley, as well as many other class members, retained her collateral and cannot recover for payments creates no conflict or lack of ability to represent a class in connection with issues relating to future use of the questionable form and possible notices to that class concerning adjudication here with respect thereto.

Authorities cited by Defendants may be distinguished. They first cite to *Perovich v. Humphrey,* 1997 WL 674975, *6 (N.D.Ill. 1997), as support that Wiley is not an adequate representative. That opinion was based on fact specific reasons having no relationship to the narrow class that will be certified here. (Plaintiffs in *Perovich* claimed no monetary damages, paid no money on their discharged debt, and apparently brought their suit based "on principle." Therefore, the court concluded that those plaintiffs might reject a beneficial settlement offer from defendants, whereas here Wiley will not be representing a dollar class claim.)

Defendants also cite *Amchem Products, Inc. v. Windsor,* —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), for the principle that class members who have not suffered actual damages cannot be adequately represented by a representative who had suffered damages. However, Wiley's loss of Count II means that she cannot claim personal damages. Moreover, for purposes of Count I class treatment enjoining the use of an illegal form, class members executed illegal reaffirmation agreements and so did Wiley. *Amchem* does not apply to the narrow class issue that will be certified here. The requirements of Fed.R.Civ.P. 23(a) have been met as to Count I.

78

However, Wiley is not an adequate class representative as to Counts II and III, nor an adequate class representative to recover damages for others in Count I. She entered into a non-enforceable reaffirmation agreement, but later made voluntary payments on a discharged debt in order to retain the collateral. As a result she is not entitled to any damages. *Amchem* is applicable to her to that extent, and class certification will be denied as to Counts II and III and as to class damage claims sought in Count I.

### Application of Fed.R.Civ.P. 23(b)(2)

Plaintiff seeks class certification under either Fed.R.Civ.P. 23(b)(2) or (b)(3). She carries the burden of meeting requirements under Fed.R.Civ.P. 23(b) which provides in relevant part:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b). "Where a class can be certified under either Rule 23(b)(2) or 23(b)(3), courts have generally held certification under Rule 23(b)(2) to be preferable." *Buycks–Roberson v. Citibank Federal Savings Bank,* 162 F.R.D. 322, 328 (N.D.Ill.1995) (citing H. Newberg, *Class Actions* § 4.20 (1992) and cases cited therein). As discussed

below, this action appears to fall within the confines of Fed.R.Civ.P. 23(b)(2); thus, this opinion need only address that section.

Rule 23(b)(2) generally does not "extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Gammon,* 162 F.R.D. at 319. However, class actions certified under Fed. R.Civ.P. 23(b)(2) may include cases which also seek monetary damages. *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.), *cert denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986) (citations omitted). Where the claim for monetary damages is incidental or ancillary to the claim for injunctive relief, Fed.R.Civ.P. 23(b)(2) may be appropriate. *Id.; see also Buycks–Roberson,* 162 F.R.D. at 335; Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1775. Generally, monetary damages have been awarded in Fed.R.Civ.P. 23(b)(2) cases where "[t]he award of damages flows automatically from the grant of injunctive or declaratory relief, and in which the damages are subject to ready calculation on the basis of a formula or principles uniformly applicable to the class." *Buycks–Roberson,* 162 F.R.D. at 335 (quoting *Rice v. City of Philadelphia,* 66 F.R.D. 17, 20 (E.D.Pa.1974)). However, for reasons earlier stated, any possible damages that may be asserted by class seekers are not readily calculable, and damage relief will not be granted herein.

CBS has used, and admits that it continues to use, a form reaffirmation agreement which on its face appears to place an unlawful limit on a debtor's right to rescind. Viewed as such, the reaffirmation agreement can be held as both illegal and unenforceable (though it remains to be decided whether it is wholly or partially unenforceable). Thus, there is no question with respect to usage of the form that Defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." "Claims arising out of form contracts are particularly appropriate for class action treatment." *Demitropoulos,* 915 F.Supp. at 1418.

Plaintiff has asked for both injunctive relief and damages. They seek to have Defendants enjoined from continuing to collect under the illegal and unenforceable agreements as well as from reporting nonpayment of the "reaffirmed debt" to credit reporting agencies, and other relief that may be deemed appropriate.

While a class will be certified here, it will be certified only for injunctive and declaratory purposes. Claims of individually affected debtors around the country for damages in the form of a refund of payments made pursuant to the illegal reaffirmation agreements or otherwise can be determined before bankruptcy judges presiding in and having jurisdiction over their cases should those debtors seek to plead and prove such damages based on their individual circumstances.

Since Defendants continue to negotiate and enter into agreements that may be unenforceable and illegal, an injunction to prevent further use of the form may be considered. A form of declaratory relief finding the form agreement invalid may also be considered. If such rulings are found warranted, they would facilitate claims that may be raised in other courts for damages or recovery based on the wide variety of individual circumstances, a variety that defeats commonality and typicality requirements for any class that seeks to represent all claims for dollar recovery.

Thus, limited class certification will be granted under Fed.R.Civ.P. 23(b)(2), Fed. R. Bankr.P. 7023, and the motion for certification will otherwise be denied.

## MOTION TO STRIKE AFFIRMATIVE DEFENSES

Defendants filed an answer asserting affirmative defenses to Plaintiff's Complaint: (1) laches, (2) voluntary payments, (3) estoppel, (4) acts or omissions of an agent, (5) equity, (6) unclean hands, (7) waiver, and (8) ratification. Plaintiff moved to strike all eight defenses. Each defense will be analyzed in turn.

Pursuant to Fed.R.Civ.P. 12(f) (applicable here pursuant to Fed. R. Bankr.P. 7012), a court may strike an insufficient affirmative defense. "Motions to strike, however, are generally disfavored and may only be granted if the 'defense is patently defective and could not succeed under any set of circumstances'" *Mellon Mortgage Co. v. Larios,* 1998 WL 292387, at *1 (N.D.Ill. May 20, 1998) (citing *Carpenter v. Ford Motor Co.,* 761 F.Supp. 62, 65 (N.D.Ill.1991)). The Plaintiff must demonstrate that the affirmative defenses are "void of merit and unworthy of any consideration." *Id.* (citing *Dimensions Medical Ctr. Ltd. v. Aetna Life Ins. Co.,* 1995 WL 103776, at *1 (N.D.Ill. March 6, 1995)). The motion to strike must be denied if any set of facts exists that could support the defense and defeat the complaint. *Id.* (citing *Bobbitt v. Victorian House Inc.,* 532 F.Supp. 734, 737 (N.D.Ill.1982)); *accord, Videojet Systems Intern., Inc. v. Inkjet, Inc.,* 1997 WL 124259, at *3 (N.D.Ill. March 17, 1997) (citing *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir.1989)).

### Laches

The first pleaded affirmative defense is laches. Defendants argue that "Plaintiff's long delay in asserting [her] claim, together with the prejudice suffered by Defendant, are such that it would be unfair and inequitable to permit Plaintiff to bring this action at this time." The defense of laches has two elements. The Defendants must show both a lack of diligence by the Plaintiff as well as prejudice to the Defendants. *Kansas v. Colorado,* 514 U.S. 673, 687, 115 S.Ct. 1733, 1742, 131 L.Ed.2d 759 (1995) (citation omitted). Plaintiff does not dispute that Defendants pleaded lack of diligence, but that CBS failed to allege it would suffer any undue prejudice. However, Defendants clearly state that, during the four-year delay until Plaintiff brought this action, they disposed of records, files, and documents which may be necessary to their defense. Thus, they have pleaded the affirmative defense of laches with sufficient specificity to preserve it for trial.

Plaintiff argues that the defense is legally insufficient here because Defendants failed to specify the documents that are no longer available or to plead exactly how those docu-

ments would have been helpful. However, Defendants do not have to allege their evidence at the pleading stage.

■ Plaintiff also argues that Defendants have unclean hands and are barred from arguing laches because CBS continues to accept payments on accounts where no valid reaffirmation has been filed. Plaintiff argues that, as that behavior violates the discharge provisions of the Bankruptcy Code, Defendants have unclean hands. However, as discussed earlier in ruling on summary judgment, Plaintiff's payments were voluntary, and therefore Defendants do not have unclean hands in their contacts with this Plaintiff.

As a result, the laches defense will not be stricken at this time. However, in light of the summary judgment entered on Count II, it remains to be seen whether this defense to Count I is moot because the ruling on Count II blocks Debtor's recovery of her payments to the extent sought in Count I. To the extent, if any, that laches is intended to block the Count I claim for relief from the practice of using an essentially illegal form, its application to that part of Count I may be questioned, but that cannot be ruled out at this stage of the case.

### Voluntary Payments

CBS's second affirmative defense is voluntary payments. Defendants allege that "Plaintiff's payments, tendered to Defendant in the agreed amount of the value of the collateral were voluntary payments pursuant to 11 U.S.C. § 524(f)." Plaintiff argues that, as a matter of law, this is not the case as payments made pursuant to an invalid reaffirmation cannot be voluntary. As discussed above in context of the motion for summary judgment, Plaintiff was aware that the reaffirmation agreement was not filed when she made her payments and, as a result, her payments were made on a voluntary basis. Pursuant to authority cited earlier, the "voluntary payment" defense is a legally recognized defense, and therefore the defense of voluntary payments will not be stricken. Indeed, summary judgment to be entered on Count II rests upon the establishment of that defense.

### Estoppel

Defendant's third affirmative defense is estoppel. CBS argues that it acted in reasonable reliance on several statements or actions by Wiley or her counsel. CBS states that it relied upon Wiley's statement in Schedule D of her bankruptcy filing that the debt was secured, upon her counsel's agreement that the value of the collateral was $250, upon her voluntary tender of funds, and upon her counsel's declaration that Wiley was fully informed and advised as to the reaffirmation. CBS asked Wiley's counsel to file the reaffirmation agreement, but she instead sent it unfiled to CBS. Plaintiff, who is charged with her attorney's knowledge, thereby knew the reaffirmation agreement was unfiled, but continued to make her payments. CBS argues, as a result, that Plaintiff is estopped from claiming the payments were involuntary, from challenging the secured status of the debt, and from challenging the negotiated value of the collateral.

Plaintiff argues that estoppel is unavailing as a matter of law, suggesting that what Defendants want estopped is Plaintiff's right to invoke the protections of her discharge. Defendants argue that they seek only to estop Plaintiff from now claiming that the debt in question was unsecured, that the collateral was without value when paid for, or that her attorney failed to do the acts she swore she did in her attorney's declaration.

Regardless of whether the defense is legally sufficient, however, it will be stricken as moot. The ruling on summary judgment has determined that Debtor, alone or through her attorney, arrived at a value for her collateral, negotiated a reaffirmation agreement, and made voluntary payments on the reaffirmation despite knowledge that it was unfiled and unenforceable. Defendants therefore cannot be entitled to monetary damages because of these very payments by her. Thus, there is no longer an issue as to Plaintiff's dollar recovery. The defense of estoppel pleaded to block such recovery will therefore be stricken as moot.

### Acts or Omissions of Counsel

Defendants' fourth affirmative defense is that "Plaintiff's misapprehension, if any, con-

cerning the enforceability of the proposed reaffirmation was solely due to the acts or omissions of her retained counsel, her agent whose acts or omissions are attributable to Plaintiff." Defendants state that Plaintiff's misapprehension of the legal effect of the reaffirmation agreement "was caused by Loraine Greenberg's failure to fulfill her duty to keep her client reasonably informed and to fulfill her duty ... to advise Plaintiff of the legal effect and consequences of that instrument." Response at 12.

Plaintiff argues that neither she nor her attorney had any legal obligation to file the reaffirmation agreement. The notion that a creditor (or its agent) can rely on the debtor's attorney to protect the creditor's rights against the debtor is strained. A creditor cannot seriously expect the debtor's attorney to assist the creditor in protecting its rights against his or her own clients. The creditor has a responsibility to file a reaffirmation agreement. 11 U.S.C. § 524. Plaintiff is correct that Debtor's attorney had no legal obligation to file the reaffirmation agreement. Moreover, Defendants have no standing to assert any breach of duty by Ms. Greenberg to her client, should they be able to establish one. This defense will therefore be stricken.

### Equity and Unclean Hands

Defendants' fifth and sixth affirmative defenses are substantially the same and both are rendered moot by the ruling on summary judgment. The defenses are, respectively, equity and unclean hands.

With the equity defense, Defendants argue, "Plaintiff seeks to retain the benefit obtained by her voluntary payments, which is her retention (and disposition) of the collateral securing the obligation. She should not be permitted to retain the benefits of the transaction and recover her voluntary payments as well." By reason of earlier rulings hereinabove, debtor's recovery in this case is limited to a possible injunction and declaratory relief. As debtor will not recover her payment or any monetary damages by reason of making her voluntary payments, this affirmative defense is moot.

Defendants also allege that Plaintiff has brought this Complaint with unclean hands. They argue that Plaintiff, through her lawyer, schemed to make voluntary payments and retain her collateral without binding herself to a reaffirmation. To the extent that this defense seems to argue that Plaintiff's attorney had an obligation to file the reaffirmation agreement, it is legally mistaken. To the extent it suggests that a debtor or a debtor's counsel have no right to plan voluntary payments on an unenforceable reaffirmation so as to retain future options, authorities cited do not support the contention that such debtor planning is in any way wrongful or that a creditor can assert it in defense. Moreover, to the extent if any that this defense goes to the issue of damages, it is mooted by the ruling on summary judgment

Further, neither of these defenses seems pertinent to the attack in Count I on Defendants' use of a questionable reaffirmation agreement form.

For all of the reasons stated, the fifth and sixth affirmative defenses are stricken.

### Waiver and Ratification

Defendants' seventh and eighth defenses are waiver and ratification. Both of these will be stricken. Defendants argue that, because Plaintiff made voluntary payments on a discharged debt, she waived any challenge to the secured status of her debt and ratified the payments made. Defendants also argue that "any debtor can waive the discharge as to payments made, and can waive any complaint or ratify her counsel's agreements concerning the collateral, its value, and the price for its retention." To the extent that these two defenses are intended to show that Plaintiff is not entitled to receive a refund of her payments, they are stricken as moot in light of the award of summary judgment on Count II.

However, it should also be observed that § 524(c) generally bars collection on a discharged debt, and requirements of § 524 cannot be waived. Failure to comply fully with the reaffirmation requirements renders the debt discharged. To hold other-

wise would be to suggest that anytime a debtor enters into a legally deficient reaffirmation agreement and makes payments on that agreement the agreement becomes enforceable. That is simply not so; indeed, a reaffirmation agreement which fails to strictly comply with the statutory requirements is unenforceable. *In re Turner*, 208 B.R. 434, 437 (Bankr.C.D.Ill.1997). Thus, waiver and ratification are not legally valid defenses, and they are stricken on that additional ground.

## CONCLUSION

For reasons stated above and pursuant to orders to be entered, a class will be certified for purposes of injunctive and declaratory relief only in Count I. Count III of the adversary proceeding will be dismissed for failure to state a claim upon which relief may be based, and summary judgment will be granted on Count II of the Adversary Complaint in favor of Defendants. Certain affirmative defenses to Count I will be stricken. Counsel will be ordered to present orders in accord with the foregoing.