**In re Vivian REYES, Debtor.**

**Vivian Reyes, Plaintiff,**

v.

**FCC National Bank, Defendant.**

**Bankruptcy No. 96–10402.**

**Adversary No. 98–1064.**

United States Bankruptcy Court,
D. Rhode Island.

July 13, 1999.

Christopher Lefebvre, Law Office of Claude Lefebvre & Sons, Pawtucket, RI, for debtor/plaintiff.

Robert D. Fine, Robert Berkelhammer, Chace Ruttenberg & Freedman, Providence, RI, John A.D. Gilmore, Richard L. Levine, Hill & Barlow, Boston, MA, for defendant.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

The Defendant, FCC National Bank ("FCC"), moves to dismiss the captioned Adversary Proceeding, arguing that Counts I and II, alleging violations of the discharge injunction, 11 U.S.C. § 524(a), should be dismissed on the ground that no private right of action was created in the enactment of that Section; and that Count III, which alleges a state law cause of action that FCC was unjustly enriched, is pre-empted by the Bankruptcy Code. Upon consideration, Counts I and II are DISMISSED for the reasons argued by FCC, and for reasons of our own, we dismiss Count III.

### DISCUSSION

Section 524(a) provides:

(a) A discharge in a case under this title—

. . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, . . . or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a).

### COUNTS I AND II

■ Upon consideration of the arguments and for the reasons argued by FCC, which are adopted and incorporated herein by reference, (see Memorandum of FCC National Bank in support of its Motion to Dismiss, Docket # 8, Reply Memo. of FCC National Bank to Vivian Reyes' Response in oppo. to Defendant's Motion to Dismiss, Docket # , and Supp.Mem. of FCC National Bank in further support of its Motion to Dismiss, Docket # , copies of which are attached hereto as Appendix A.), In re Mayhew, 223 B.R. 849, 857–58 (D.R.I. 1998), [1] we conclude that a proceeding to remedy a violation of the discharge injunction pursuant to 11 U.S.C. § 524(a) must be one for contempt, as there is no express or implied right of action under that Section. Accordingly, FCC's Motion to Dismiss Counts I and II of the Complaint is GRANTED, and the Debtor has fifteen (15) days within which to file an appropriate pleading consistent with this opinion.

### COUNT III

■ Although we disagree with FCC's argument on the preemption issue, Count III is nevertheless dismissed, on the ground that this Court lacks subject matter jurisdiction over the claim.[2] See Community Bank v. Boone (In re Boone), 52 F.3d 958, 960 (11th Cir.1995), (the bankruptcy court dismissed state law causes of action that were factually intertwined with the core bankruptcy claims, on the ground that the bankruptcy court lacked jurisdiction even under the expansive "related to" provisions for jurisdiction). Here, since the asserted state law claims arose post-petition, these causes of action are not property of this estate, never will be, and any monetary recovery will not benefit creditors. See also Goldstein v. Marine Midland Bank (In re Goldstein), 201 B.R. 1, 5 (Bankr.D.Me.1996).

Enter Judgment consistent with this decision.

### APPENDIX A

### MEMORANDUM OF FCC NATIONAL BANK IN SUPPORT OF ITS MOTION TO DISMISS

### I. INTRODUCTION

This is the second effort of the plaintiff Vivian Reyes to bring a putative class

---

1. In Mayhew, Judge Lagueux, approving the practice of adopting and incorporating a party's argument in deciding a matter, stated: this Court is aware of no First Circuit case condemning the practice of deciding motions by reference to the arguments of the prevailing party, much less reversing a case on that basis. . . . Indeed, this practice is a common one which this Court itself follows from time to time. While, in a perfect world, every judicial ruling would be accompanied by a detailed opinion precisely explaining the basis of the ruling, the realities of crowded dockets and scarce resources require something short of perfection.
223 B.R. at 858 (footnote omitted).
In addition to Judge Lagueux's reference to the strain on judicial resources, we feel that if a party has expressed a point of view in a manner upon which we are unable to improve, the adoption of that language within a decision is quite appropriate.

2. This dismissal is without prejudice, of course, to the Debtor's right to file these claims in a court of competent jurisdiction.

action against FCC National Bank ("FCC") based on a reaffirmation agreement ("Reaffirmation Agreement") that she voluntarily entered into with FCC in connection with personal Bankruptcy proceedings initiated by her in the Bankruptcy Court of the District of Rhode Island. Plaintiff's first effort, a complaint brought in the United States District Court for the Northern District of Illinois, Eastern Division (No. 97–C–6946) ended in dismissal. Plaintiff's second effort should fair no better. Her complaint contains three counts: Counts I and II allege that the Reaffirmation Agreement and FCC's collection of money pursuant to it violates 11 U.S.C. Section 524. Count III alleges that FCC's collection of money pursuant to the Reaffirmation Agreement constitutes unjust enrichment under state law. Plaintiff's complaint on its face fails to state any claim upon which relief can be granted and should be dismissed pursuant to Bankruptcy Rule 7012. Count I and II should be dismissed because there is no private right of action for alleged violations of Section 524 of the Bankruptcy Code. Her sole remedy is an action for civil contempt. Count III must be dismissed because the claim is preempted by the Bankruptcy Code.

## II. THE COMPLAINT AND ITS CLAIMS

### A. Facts Alleged In Plaintiff's Complaint Concerning Her Claims

The complaint, read in a favorable light to plaintiff as is her due under the law relating to Rule 7012 motions and assuming *for purposes of this motion only,* the truth of its allegations, alleges as follows:

On February 12, 1996, plaintiff Vivian Reyes filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court of the District of Rhode Island, *In Re Reyes,* 96–10402 (Bankr.D.R.I.). *See* Complaint ("Compl.") ¶ 9. She was represented by counsel in the

Bankruptcy proceeding. Compl. ¶ 12. In the Bankruptcy proceeding, plaintiff listed an obligation for a debt owed to FCC for the purchase of goods for personal use. Compl. ¶ 10. FCC is one of the largest issuers of credit cards in the United States. Compl. ¶ 5. Before the discharge order was issued in May, FCC mailed to Reyes the Reaffirmation Agreement which she executed. A copy of the Reaffirmation Agreement is attached as Exhibit A to the complaint and dated May 31, 1996. In the Reaffirmation Agreement plaintiff acknowledged that she had been advised of her right to rescind the Reaffirmation Agreement within 60 days of its filing in Court or "prior to discharge, whichever occurs later." *See* Compl.Ex. A. Plaintiff alleges "on information and belief" (and FCC disputes) that the Reaffirmation Agreement was not thereafter filed in Court. Compl. ¶ 13. An order of discharge was entered on July 2, 1996. Compl.Ex. B. Finally, plaintiff alleges that the Reaffirmation Agreement does not comply with the provision of 11 U.S.C. Section 524(c) and that plaintiff has made payments to FCC pursuant to the Reaffirmation Agreement. Comp. ¶¶ 14, 15 and Ex. C.

### B. Claims Alleged

In Count I, plaintiff alleges that FCC violated 11 U.S.C. Section 524(c) by "willfully violating specific Bankruptcy Code provisions governing and limiting the permissible post-petition reaffirmation of debt." Compl. ¶ 36. Plaintiff seeks injunctive and monetary relief.

In Count II, plaintiff alleges that FCC, by seeking to collect debt incurred prior to her bankruptcy petition, has violated 11 U.S.C. Section 524(a)(2). Plaintiff seeks monetary and injunctive relief. In Count III plaintiff asserts a state law claim for unjust enrichment and seeks recovery of money she paid FCC pursuant to the Reaffirmation Agreement.

510

## C. Class Allegations

Plaintiff seeks to bring this action on behalf of herself and a purposed nationwide class of former debtors allegedly with claims similar to her who entered into reaffirmation agreements with FCC within a five year period preceding the filing of this action or made a payment pursuant to such an agreement within a six year period preceding the filing of this action.[1]

## D. Prior Proceedings

Based on allegations similar to those discussed above, in October 1997, plaintiff brought a putative class action against FCC in the United States District Court for the Northern District of Illinois (Docket No. 97 C 6946). In that action, Counts I and II and V were the same as Counts I, II and III in this action. However, in Counts III and IV plaintiff also alleged violations of RICO and in Count VI a violation of the Illinois Consumer Fraud statute. The FCC moved to dismiss the Illinois action pursuant to Rule 12(b)(6) on a variety of grounds, including the lack of subject matter jurisdiction over a Rhode Island bankruptcy Court's discharge order and the lack of a private right of action under Section 524 of the Bankruptcy Code. The motion was fully briefed and the Court (Leinenweber, J) thereafter dismissed the entire action on May 8, 1998. A copy of the Court's Order is attached hereto as Exhibit A.

The Court dismissed the RICO counts with prejudice. The Court held that plaintiff's Section 524 claims should be resolved in the Bankruptcy Court, observing that a discharge order has the force of an injunction and that plaintiff was "essentially asking this Court to hold FCC in contempt of another Court's injunction." Accordingly, the court dismissed these counts without prejudice. However, the Court said that "Section 524 *does not* expressly provide for damages and attorneys fees and costs or create a private right of action" (emphasis added) and that plaintiff's potential claim in Bankruptcy Court was for civil contempt. *See* Ex. A, p. 2. Notwithstanding this trenchant observation by the Court, plaintiff proceeded with this private action based on Section 524.[2]

## III. ARGUMENT

### A. Counts I And II Should Be Dismissed Because There Is No Private Right Of Action Under Section 524 Of The Bankruptcy Code.

Plaintiff asserts violations of Section 524 of the Bankruptcy Code, including a violation of the discharge order entered by the Bankruptcy Court. Because plaintiff does not have a private right of action for alleged violations of Section 524 of the Bankruptcy Code, Counts I and II must be dismissed.[3]

The Bankruptcy Code nowhere provides a private right of action for alleged violations of the procedures governing reaffirmation agreements. Therefore, plaintiff

---

1. How this Court could have jurisdiction over a class of former debtors from disparate jurisdictions who bankrupt estates have all been closed, plaintiff does not say. It is axiomatic that in a class action each plaintiff must satisfy all jurisdictional requirements. *See* *Moore's Federal Practice* § 23.07[2] at 23–38. However, this issue is premature. Plaintiff must first demonstrate that she has a proper claim before seeking to represent a class pursuant to Rule 23. In the event the Court denies FCC's Motion to Dismiss, FCC will challenge plaintiff's ability to represent such a class in her Rhode Island Bankruptcy proceedings.

2. With respect to plaintiff's state law claims, the Court noted that having dismissed the federal claims, "the Court has no jurisdiction to address her supplemental state law claims."

3. FCC Submits that plaintiff's recourse for a violation of Section 524 is an application for civil contempt. However, FCC obviously disputes that there are any facts concerning plaintiff's Reaffirmation Agreement that would warrant holding FCC in contempt.

carries the heavy burden of establishing that Congress intended an implied right of action under Section 524. As Justice Scalia said in a concurring opinion in *Thompson v. Thompson*, 484 U.S. 174, 190, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) "... this court has long since abandoned its hospitable attitude toward implied rights of action." *See also Arroyo–Torres v. Ponce Fed. Bank, F.B.S.*, 918 F.2d 276, 278 (1st Cir.1990) (noting that "a high hurdle confronts claimants asserting implied rights of action").

A private right of action will not be implied unless a plaintiff can show (1) she is one of the class for whose special benefit the statute was enacted; (2) there was legislative intent to create such a remedy; (3) a private right of action is consistent with the underlying purpose of the legislative scheme; and (4) the cause of action is not one traditionally relegated to state law. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

In analyzing whether there is an implied private right of action, the Court does not weigh the four *Cort* factors equally. Instead, the second factor, regarding legislative intent, plays a dominant role. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("The dispositive question remains whether Congress intended to create [a private] remedy."); *see also Sterling Suffolk Racecourse Ltd. Partnership v. Burrillville Racing Ass'n, Inc.*, 989 F.2d 1266, 1268 (1st Cir.1993) ("In determining whether a private cause of action is implied in a federal statute, a court's central focus must be on congressional intent."). The First Circuit has held, consequently, that is not necessary to address all four *Cort* factors. *See Barron v. Nightingale Roofing, Inc.*, 842 F.2d 20, 21 (1st Cir.1988) ("Without discussing factors one and four, we find that the second and third *Cort* factors prevent the implication of ... a cause of action.") and *Arroyo–Torres*, supra at 278 ("... focus must be on intent of Congress" quoting *Kwatcher v. Mass. Service Emp. Pension Fund*, 879 F.2d 957 (1st Cir.1989).)

There is no evidence of a legislative intent to create a private right of action under Section 524. Nor would such an implied right of action be consistent with the underlying purpose of the legislative scheme. When Congress has wanted to provide a private cause of action under the Bankruptcy Code, it has expressly done so, as in the case of establishing an express private right of action for violations of the Code's automatic stay provision. *See* 11 U.S.C. § 362(h) ("An individual injured by a willful violation of a stay ... shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.")

The analysis above demonstrates an implied right of action under Section 524 cannot pass *either* the second or third prong of the *Cort* test. Courts that have considered the question have rejected private claims pursuant to Section 524 for just these reasons.

In *Costa v. Welch*, 172 B.R. 954, 957 (Bankr.E.D.Cal.1994), the Court in granting a dismissal of a private right of action based on an alleged violation of a discharge injunction held that:

> After surveying procedure and remedies, I conclude that a putative violation of the discharge injunction does not give rise to an implied private cause of action for damages and that damages are only available as a matter of the judicial discretion that applies in matters of civil contempt. Thus, the debtors' adversary proceeding seeking compensatory and punitive damages will be dismissed.

In reaching this conclusion the Court noted (at p. 966) that "[t]he second and third elements of the *Cort v. Ash* test are fatal here. There is no indication of any legislative intent to create such a right of action.... Nor is it consistent with the underlying legislative scheme. The legislative scheme provides a permanent in-

junction for which the traditional and well known remedy is contempt. If a nontraditional remedy was being prescribed, the Congress could and would have done so."

In *Perovich v. Humphrey*, 1997 WL 674975 at *3 (N.D.Ill.) the Court reached the same result:

Under § 524(a)(2), the discharge has "the force of an injunction against a suit by any holders of listed debts ... to collect those debts" from a discharged debtor. [citation omitted] Section 524 does not expressly allow for damages, costs or attorney fees, or create a private right of action. This omission does not seem accidental where Congress did not expressly provide similar remedies in other sections. See 11 U.S.C. § 362(h) (private right of action for willful violation of automatic stay).

The Court in *Perovich* also indicated that plaintiff's remedy for alleged violations of Section 524 was civil contempt, not a private right of action, and dismissed the claim.

*See also Cox v. Zale Delaware*, 1998 WL 397841 (N.D.Ill.) (The Court dismissed plaintiff's action after finding no indication that Congress intended a private right of action for violations of Section 524 and observing that it was "not surprising that Courts within and outside this district have refused to find a private right of action implied under Section 524 of the Code."); *Sullivan v. All States Lumber, Inc.*, 90 B.R. 307, 308–309 (1988) ( [Section 524] "does not create a cause of action upon which Mr. Sullivan may base his legal action against the appellees herein.... [Section 524] relates only to the effect of discharge in bankruptcy and does not constitute a proscription by the Congress of any conduct by a person in regard to such discharge, and thus does not create a private right of action."); and *Pereira v. First North American National Bank*, 223 B.R. 28, 30 (1998) (dismissing claims under Section 524 because "... no

private right of action exists under Section 524 ...")

These decisions are entirely consistent with cases dealing with private rights of action under other sections of the Bankruptcy Code. *See, e.g., Kelvin Publishing, Inc. v. Avon Printing Co.*, 72 F.3d 129, 1995 WL 734481 (6th Cir.1995) (holding that express private right of action in Section 362(h) negates possibility of implied right of action under Section 363); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1177 (6th Cir.1979) (refusing to imply a private remedy under precursor to Section 524 due to the lack of legislative intent to create such a right); and *Smith v. Keycorp Mortgage, Inc.*, 151 B.R. 870, 876 (N.D.Ill.1993) (Hart, J.) holding that there is no private right of action under Section 1322 of the Bankruptcy Code.

Because the language and history of the Bankruptcy Code demonstrates, as the Courts in the decisions discussed above have found, that Congress did not intend an implied right of action under Section 524, Counts I and II must be dismissed.

B. *Plaintiff's State Law Claim For Unjust Enrichment Is Preempted.*

Plaintiff's state law claim for unjust enrichment should be dismissed on the grounds that it is pre-empted under the Bankruptcy Code. The preemption doctrine has its roots in the Supremacy Clause. "Pre-emption may be either express or implied and 'is compelled where Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' " *Fidelity Federal Savings & Loan Assn. v. De La Cuesta*, 458 U.S. 141, 152–153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). In *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir.1996) the Ninth Circuit considered Congressional intent with respect to the Bankruptcy Code:

... a mere browse through the complex, detailed and comprehensive provision of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a

whole system under federal control which is designed to bring together and adjust all of the rights of and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.

In *Zale, supra,* the Court applying these principles had no difficulty in dismissing plaintiff's unjust enrichment claim with prejudice in conjunction with the Court's dismissal of *Zale's* Section 524 claim. The Court held "The expansive reach of the Code preempts virtually all claims relating to the alleged misconduct in the bankruptcy courts." In *Pereira, supra,* the Court likewise dismissed both plaintiff's private Section 524 claim for damages and a state law claim for unjust enrichment:

> Here, the Bankruptcy Code provides the remedial scheme for addressing violations of ... 524 including the filing of civil contempt proceedings.... Congress clearly intended violations of the Bankruptcy Code provisions relating to the automatic stay and post-discharge injunction to be addressed in the bankruptcy court rather than in state law actions for an accounting or for unjust enrichment. The plaintiff's state law claims of unjust enrichment and accounting which are tied to the Defendant's alleged violations of ... 524 are therefore preempted. The state law claims are therefore dismissed.

For this reason, Count III should be dismissed.

## CONCLUSION

For the foregoing reasons, FCC prays that its motion be allowed and this action be dismissed.

Dated: September 14, 1998

Plaintiff Vivian Reyes sues FCC National Bank ("FCC") and John Does 1–10, on behalf of herself and others similarly situated, alleging violations of the Bankruptcy Code and RICO, as well as state law claims. Defendant now moves to dismiss.

Plaintiff's allegations are as follows. On February 12, 1996, Reyes filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of Rhode Island. In the bankruptcy proceeding, plaintiff listed an obligation for a debt owed to FCC. On July 2, 1996, the bankruptcy court issued a discharge order pursuant to 11 U.S.C. § 524. On May 31, 1996, before her debts were discharged, plaintiff and FCC entered into a reaffirmation agreement, pursuant to which plaintiff agreed that she would pay the debt owed to FCC Bank, which otherwise would have been discharged in bankruptcy. Plaintiff has made payments under the reaffirmation agreement.

In Counts I and II of the complaint, plaintiff alleges that FCC is liable, on a class-wide basis, for willfully violating Section 524 of the Bankruptcy Code, 11 U.S.C. § 524, by allegedly using invalid reaffirmation agreements to induce payments of discharged debts. Specifically, plaintiff alleges that FCC failed to file the reaffirmation agreement with the bankruptcy court, did not include the necessary disclosures in the agreement and failed to procure a declaration of debtor's attorney. Plaintiff requests that this court enjoin FCC from collecting payments under the reaffirmation agreement, refund all payments made pursuant to the agreement and award punitive damages and attorney's fees and costs. Defendant moves to dismiss these claims, arguing that this court lacks subject matter jurisdiction over an alleged violation of the bankruptcy court's order and that there is no private right of action for violations of § 524 of the Bankruptcy Code.

The court finds that plaintiff's claims should be resolved by the bankruptcy court. To begin, a discharge order "has the force of an injunction against a suit by any holders of listed debts." *In re Hendrix*, 986 F.2d 195, 197 (7th Cir.1993). By seeking damages for violation of that injunction, plaintiff is essentially asking this court to hold FCC in contempt of another court's injunction. However, it is the court against which contempt is committed that has the jurisdiction to issue the sanction. *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir.1992). Additionally, district courts are empowered to assign all Title 11 cases to bankruptcy courts, 28 U.S.C. § 157; *see also* Local Rule 2.33, and bankruptcy courts readily reopen a closed bankruptcy case to ensure the integrity of the discharge order. *See Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir.1994) (bankruptcy court retained jurisdiction to modify the discharge injunction). Plaintiff has not presented this court with any reasons for filing a new claim in this court in lieu of reopening her bankruptcy case. The bankruptcy court is more familiar with the law and facts, and is thus the more appropriate forum to resolve plaintiff's claims. *See Perovich v. Humphrey*, No. 97 C 3209, 1997 WL 674975, at *2–4 (N.D.Ill. October 28, 1997) (violations of Section 524 are "best addressed by the Bankruptcy Judge who issued the order in the first place and possesses greater familiarity with the facts and the law at issue"). Moreover, since § 524 does not expressly provide for damages and attorneys fees and costs or create a private right of action, it is unclear whether district courts can entertain claims brought under this section of the Bankruptcy Code. *Id.* at *4 (refusing to imply a private right of action under § 524). Therefore, Counts I and II are dismissed without prejudice.

Next, the court turns to Counts III and IV, where plaintiff alleges that FCC violated RICO by scheming with its parent corporation and its employees to collect money on debts already discharged in bankruptcy. To state a claim under § 1962(c) of RICO, plaintiff must establish the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir.1995).

Defendant first argues that plaintiff has failed to allege a sufficient pattern of racketeering activity. To establish a "pattern of racketeering" under RICO, plaintiff must allege at least two criminal acts. *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343, 1347 (7th Cir.1995) ("*Emery I*"). Additionally, where as here, plaintiff relies upon acts of mail and wire fraud as the basis for her RICO claim, the circumstances of each act must be pled with particularity. Fed.R.Civ.P. 9(b). The complaint must at minimum "state the time, place and content of the alleged communications perpetrating the fraud." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir.1991).

In the instant case, plaintiff's complaint is sufficiently particular with regard to the alleged fraud perpetrated against her, but does not allege any of the particularities associated with the fraud perpetrated on other debtors. As such, plaintiff has failed to allege a pattern of racketeering activity. *See Emery I*, 71 F.3d at 1348. Plaintiff, however, argues that dismissal of her claim on this ground alone would be premature at this juncture, and she should be given leave to conduct discovery, so she could identify additional members of her class and amend her complaint. *See Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir.1998) ("*Emery II*") (opportunity to amend should be given so as to avoid "Catch 22–situation where a complaint is dismissed because of plaintiff's inability to obtain essential information without pretrial discovery"). However, here, it would be futile to allow plaintiff to amend her complaint, since her claim fails on a separate ground—she has not properly alleged a RICO enterprise.

A RICO "enterprise" is defined as any "individual, partnership, corporation, association, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise, however, must be a distinct and separate entity from the person—"section 1962(c) requires separate entities as the liable person and its enterprise which has its affairs conducted through a pattern of racketeering activity." *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 400 (7th Cir.1984). In the context of a corporation, its subsidiary, and its employees, this requirement is more difficult to establish. Pleading that the parent corporation delegated a duty to its subsidiary and its agents which acted fraudulently on its behalf is not sufficient to establish separateness. *See Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir.1997). "The firm must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate firm (or legitimate-appearing) firm and uses the firm as the instrument of its criminality." *Emery II*, 134 F.3d at 1324. Plaintiff alleges two different enterprises.

In Count III, plaintiff alleges that First Chicago NBD ("NBD") was the "enterprise" through which FCC acted as the "person" to perpetrate mail fraud. To be liable under this type of scheme, FCC "must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525, 540 (1993). Indeed, "liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs not just their own affairs." *Id.* Plaintiff's factual allegations are not sufficient in this respect. According to plaintiff, NBD delegated the conduct of its consumer credit card business to FCC. Compl. ¶ 45. FCC then fraudulently schemed to collect money on debts already discharged in bankruptcy, and conveyed the profits and revenues of this scheme to its parent, NBD. *Id.* at ¶¶ 46–47. There are no allegations that FCC conducted or participated in the affairs of the alleged enterprise, NBD. Plaintiff only alleges that FCC conducted its own business through a pattern of racketeering activity. This is not enough to establish an enterprise distinct from the person. *See Richmond*, 52 F.3d at 640.

Moreover, despite the fact that plaintiff identifies NBD as the "enterprise" and FCC as the "person," plaintiff's factual allegations appear to describe the opposite relationship—a scheme whereby NBD delegates authority to collect money on discharged debts to its subsidiary, FCC. At times, plaintiff's brief also characterizes NBD as accomplishing its scheme through FCC. Pl.'s Resp. at 15. If it is this type of scheme plaintiff intended to attack, her complaint still does not satisfy the distinctiveness requirement. *See Fitzgerald*, 116 F.3d at 227 (refusing to find corporate "person" distinct from "enterprise" composed of either its "subsidiaries or agents").

Plaintiff's second RICO scheme fails for the same reason. In Count IV, plaintiff alleges a that John Does 1–10, agents of FCC, worked through FCC and NBD, the enterprise, by entering into fraudulent reaffirmation agreements with debtors. However, plaintiff fails to allege that the Does controlled the corporate entities or portions thereof or used that control to commit alleged frauds, as required for liability under RICO. *See Emery II*, 134 F.3d at 1325. Plaintiff's failure to identify any actual corporate officers or employees as liable parties precludes it from alleging precisely the type of involvement or control they exercised over the enterprise. According to the complaint, the Does "conducted the business activities of FCC and NBD entrusted to them through repeated acts of mail fraud." Compl. ¶ 55. These allegations merely indicate that the Does carried out the fraud through the duties

delegated to them, not that they used the enterprise as an instrumentality to commit a pattern of racketeering activity. As such, plaintiff has failed to satisfy the distinctiveness requirement. *See id.*

Having rejected plaintiff's federal claims, the court has no jurisdiction to address her supplemental state law claims. *See Carr v. CIGNA,* 95 F.3d 544, 546 (7th Cir.1996). Thus, the remaining state law claims are dismissed without prejudice for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c).

In conclusion, defendant's motion to dismiss is granted. Counts I, II, V and VI are dismissed without prejudice. Counts III and IV are dismissed with prejudice.

*REPLY MEMORANDUM OF FCC NATIONAL BANK TO VIVIAN REYES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS*

### INTRODUCTION

The defendant FCC National Bank submits this Reply Memorandum in further Support of its Motion to Dismiss and Supporting Memorandum filed September 14, 1998. Plaintiff's Opposition, filed October 6, 1998, all but ignores the overwhelming authority cited by the defendant in favor of references to cases that support defendant's position or are not on point. Plaintiff has no private right of action under Section 524 of the Bankruptcy Code, her state law claim is preempted, and her complaint should be dismissed.

### I. THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 524 OF THE BANKRUPTCY CODE

Defendant FCC National Bank, in its Memorandum in Support of Its Motion to Dismiss ("Memorandum in Support"), cites and discusses numerous cases from various jurisdictions holding expressly or *in dicta* that Section 524 of the Bankruptcy Code does not create a private right of action by implication: *See Cox v. Zale Delaware, Inc.,* 1998 WL 397841, at *3 (N.D.Ill. July 13, 1998) ("[C]ivil contempt is the relief to which [plaintiff] is entitled for a violation of [Section 524(a)(2) ].");* Pereira v. First North American Nat'l Bank,* 223 B.R. 28, 30 (N.D.Ga.1998) ("[C]ase law uniformly holds that Section 524 does not expressly allow for damages, costs, or create a private cause of action.");* Perovich v. Humphrey,* No. 97 C 3209, 1997 WL 674975, at *3 (N.D.Ill. Oct. 28, 1997) ("Section 524 does not expressly allow for damages, costs or attorney fees, or create a private right of action. This omission does not seem accidental where Congress did expressly provide similar remedies in other sections.");* Costa v. Welch (In re Costa),* 172 B.R. 954, 966 (Bankr.E.D.Cal.1994) (applying the *Cort v. Ash* test and concluding that "[t]here is no indication of any legislative intent to create such a right of action"); and *Sullivan v. All States Lumber, Inc.,* 90 B.R. 307, 308–09 (M.D.Tenn.1988) ("[Section 524] does not create a cause of action upon which [plaintiff] may base his legal action against the [defendants] herein."). *See also, Reyes v. FCC National Bank,* No. 97 C 6946, transcript of oral ruling at p. 2 (E.D.Ill. May 8, 1998) ("[S]ince § 524 does not expressly provide for damages and attorneys fees and costs or create a private fight of action, it is unclear whether district courts can entertain claims brought under this section of the Bankruptcy Code.").

Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Response") (a) does not distinguish or meaningfully discuss the cases cited by defendant in its Memorandum in Support; (b) unsuccessfully attempts to argue that *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the case in which the Supreme Court case laid down the test for determining whether a statute implies a private right of action, does not govern the outcome in this case; and (c) attaches and discusses several recent cases that are not on point and/or are unpersuasive.

*Plaintiff's Discussion of the Cases Cited by The Defendant.*

Plaintiff makes a meager and ineffectual attempt to distinguish the cases cited by the defendant. With respect to *Pereira, supra,* plaintiff says, citing *In re Hardy,* 97 F.3d 1384 (11th Cir.1996), that it "is wrongly decided and inconsistent with binding precedent for the relevant Circuit." (Response, p. 10.) However, *Hardy* is in complete harmony with *Pereira.* It held that Section 524 does not authorize a claim for damages and plaintiff's remedy for a violation of Section 524 was to be had under the contempt powers conferred on the court by Section 105. *Hardy,* 97 F.3d at 1389.

Plaintiff argues that *Cox* and *Perovich* "did not dismiss § 524 claims, but referred the cases to the Bankruptcy Court." (Response, p. 9.) However, as discussed in the Memorandum in Support, both courts clearly stated their views that Section 524 did not afford the plaintiffs a private right of action under Section 524.

Finally, defendant attempts to brush the *Costa* and *Sullivan* decisions aside by arguing that their holdings are defective because of their failure to cite to *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), and *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). As discussed below, there is no reason the decisions in *Cox* and *Perovich* should have cited these cases as they are not on point.

*Cort v. Ash*

*Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), requires consideration of four factors to determine whether a private right of action should be implied from a statute that does not create one on its face. Subsequent Supreme Court cases make clear that legislative intent is by far the most important of the four factors. Indeed, in his concurring opinion in *Thompson v. Thompson,* Justice Scalia suggested that *Touche Ross & Co. v. Red-*

*ington, Etc., et al.,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 had "convert[ed] one of [*Cort's*] four factors (congressional intent) into *the determinative factor,* with the other three merely indicative of its presence or absence." *Thompson v. Thompson,* 484 U.S. 174, 189, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (internal citations omitted) (emphasis in the original). As defendant demonstrated in its Memorandum in Support, not only is there an absence of evidence of legislative intent to create a private right of action under Section 524, there is affirmative evidence that Congress did not intend to create a private right of action under Section 524.

Tacitly conceding that plaintiff's claim to a private right of action under Section 524 can not survive the *Cort v. Ash* test, plaintiff attempts to avoid this problem by arguing that Section 524 is grandfathered from being subject to *Cort v. Ash* analysis because, plaintiff claims, the Supreme Court recognized the equivalent of a Section 524 private right of action prior to its decision in *Cort v. Ash.* Therefore, plaintiff argues that when Congress adopted Section 524 in 1978, it was codifying existing law including an implied right of action. (Response, pp. 4–7)

Plaintiff's whole argument on this point is based on a complete misreading of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Plaintiff claims that *Perez* "addressed the issue presented in this case" and "recognized the Bankruptcy Code cause of action the plaintiffs asserts." (Response, p. 4.) In truth, *Perez* did not involve in any way the existence of a private right of action under the former Bankruptcy Act. *Perez* was a constitutional challenge under the Supremacy Clause to an Arizona statute which conditioned the issuance of a driver's license to payment of an unsatisfied tort judgment arising out of a motor vehicle accident, although the liability had been discharged in bankruptcy. Moreover, the *Perez* decision was codified

in Section 525, not 524 as the legislative history cited by plaintiff indicates.[1]

Plaintiff also claims support for its implied right of action in *Transamerica Mortgage Advisors, Inc. v. Lewis.* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146, (1979). Specifically, plaintiff argues, citing to *Transamerica,* that where Congress declares a contract void, it necessarily implies a remedy.[2] Plaintiff's argument reads too much into too little. It is true that in *Transamerica,* the Supreme Court found that Section 215 of the Investment Advisers Act "fairly implies a right to specific and limited relief in a federal court [such as] an equitable cause of action for rescission or similar relief." *Id.* at 18–19, 100 S.Ct. 242. The *Transamerica* Court, however, was not stating some general principle of law. On the contrary, its ruling was a result of strict adherence to and application of the *Cort v. Ash* test to provisions of the Investment Advisers Act.

*Transamerica* supports defendant's position. Contrary to plaintiff's claim that the defendant has "ignored" the *Transamerica* case, the defendant cited *Transamerica* for its holding that congressional intent is the touchstone of the *Cort* test for implied rights of action. (Memorandum in Support, p. 6.) In applying *Cort v. Ash* analysis to the Investment Advisers Act, the Court confronted an obstacle, namely, that "the legislative history of the [Investment Advisers] Act is entirely silent—a state of affairs not surprising when it is remembered that *the Act concededly does not explicitly provide any private remedies whatever.*" *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (emphasis added). In that context, the *Transamerica* Court observed that on the question of private rights of action, utter silence did not cut in either party's favor. *Id.*

A necessary correlative of this observation, and one specifically emphasized in the Court's decision, is that when Congress is *not* silent, congressional intent is paramount, and a court must pay close attention and give primacy to what Congress has said. *Id.* at 15–16, 100 S.Ct. 242.

Turning to the case at hand, in contrast to the Investment Advisers Act, Congress was not silent on the question of private remedies under the Bankruptcy Code. Rather, Congress explicitly created private causes of action to enforce certain provisions of the Code, such as Section 362(h). Therefore, where *Transamerica* required that congressional silence under the Investment Advisers Act could not be taken to cut in either direction, congressional silence under Section 524 of the Bankruptcy Code must, under the analysis of *Transamerica,* cut in the defendant's fa-

---

1. Plaintiff also contends that "Congress acted on the premise that there is a private remedy under § 524" (Response, p. 8) when it modified Section 106(a)(1) in 1994 by abrogating sovereign immunity with respect to various provisions of the Code, including Section 524. Plaintiff asserts that "Amended § 106 allows the maintenance ... of the private remedy which exists under § 524 against private parties." (Response, p. 9) The language of the amendment is bereft of evidence to support plaintiff's contention that a pre-existing private remedy exists under § 524; indeed, Section 106(a)(5) provides that nothing in the amendment "shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law." 11 U.S.C. § 106(a)(5). This language again demonstrates Congress' intent that private rights of action shall not exist under every provision of the Bankruptcy Code, and is further indication of Congress' cognizance that private rights of action must be specifically created or intended.

2. Note also that Section 215(b) speaks in the language of contract and the rights of persons who are parties to contracts. In contrast, Section 206 (the provision in which the *Transamerica* Court found no implied right of action) "simply proscribes certain conduct, and does not in terms create or alter any civil liabilities." *Transamerica,* 444 U.S. at 19, 100 S.Ct. 242. Unlike Section 215, Section 524 makes no reference to the parties' rights and liabilities, contractual or other. Rather, like Section 206, Section 524 simply proscribes creditors from engaging in certain conduct.

vor. Specifically, since Congress did speak to the question of private remedies under Section 362(h) of the Bankruptcy Code, *Transamerica* dictates that Congress' silence with regard to private remedies under Section 524 is indicative of an intent not to provide such remedies under the latter section. *Transamerica*, 444 U.S. at 20, 100 S.Ct. 242 (noting that "[i]n view of ... express provisions for enforcing the duties imposed by § 206, it is highly improbable that Congress absentmindedly forgot to mention an intended private action [for damages and other monetary relief]") (internal quotation omitted). *See also Allison v. Liberty Sav.*, 695 F.2d 1086, 1088–89 (7th Cir.1982) ("The fact that Congress explicitly provided federal private remedies in three of the four sections immediately preceding § 10 [of the Real Estate Settlement Procedures Act] is evidence that Congress intended to deny such remedies by its silence in § 10.")

Finally, while the defendant disputes that there are any facts concerning plaintiff's Reaffirmation Agreement that would warrant holding FCC in contempt, plaintiff ignores the fact that she in fact has a remedy pursuant to Section 105 and the contempt powers of the Court. Under those powers, discussed *infra*, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Act, 11 U.S.C. § 105(a), including an award of monetary relief in appropriate circumstances. *In re Hardy*, 97 F.3d 1384, 1389–90 (11th Cir.1996). Thus, far from undermining defendant's position that Section 524 does not create a private right of action, *Transamerica* only reinforces it.[3]

---

**3.** Plaintiff also claims that *National Gypsum*, 118 F.3d 1056 (5th Cir.1997), "specifically rejected FCC's argument that § 524 does not confer an affirmative federal right to relief" (Plaintiff's Response, p. 2). Plaintiff confuses an action for declaratory relief with a private cause of action for damages.

The *Gypsum* court recognized that a contempt proceeding in the bankruptcy court that issued the discharge injunction is the usual form of enforcement, but that in certain circumstances, a debtor could seek a declaratory judgment that a particular debt had been discharged by filing an adversary proceeding in the same bankruptcy court. *Id.* at 1063. Under the Federal Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought."* 28 U.S.C. § 2201(a) (emphasis added). The language of Section 2201 excepts proceedings "under section 505 or 1146 of title 11." *Id.* "By implication ... [bankruptcy courts are] authorized to render declaratory relief, except in those instances expressly prohibited under Section 2201." *In re Spencer*, 7 B.R. 458, 460–61 (Bankr.S.D.Cal.1980). *See also* 28 U.S.C. § 157(a) (providing that district courts "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 ... shall be referred to the bankruptcy judges for the district.").

The question of whether a bankruptcy court may entertain a declaratory action is a wholly different inquiry from whether a given provision of the Bankruptcy Code creates a private action for damages. Section 2201 creates a new remedy, but does not confer federal subject-matter jurisdiction. To entertain a declaratory action, a court must have an independent basis for jurisdiction. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 15–17, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

In the case of a party seeking a declaration of rights and relations under Section 524, subject matter jurisdiction is clear. Bankruptcy courts, through the joint operation of 28 U.S.C. § 1334(a) (granting federal district courts exclusive jurisdiction over title 11 cases); 28 U.S.C. § 157(a) (authorizing district courts to transfer title 11 cases to the bankruptcy courts); and 28 U.S.C. § 157(b) (empowering bankruptcy courts to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11"), bankruptcy courts may entertain actions for declaratory relief arising under title 11.

In contrast, as argued elsewhere in this brief, a coercive action such as a private cause of action for damages must be created either expressly by Congress, or by implication. Where such a cause of action is not expressly provided, as is the case with Section 524, *Cort v. Ash* analysis applies.

Plaintiff also claims that Section 105 of the Bankruptcy Code creates a private right of action for violations of Section 524. This argument has no merit. Section 105 empowers a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Act, 11 U.S.C. § 105(a), and grants statutory contempt powers to a Bankruptcy Court. *In re Hardy,* 97 F.3d 1384, 1389 (11th Cir.1996). This includes power "to award monetary and other forms of relief ... to the extent such awards are 'necessary and appropriate' to carry out the provisions of the Bankruptcy Code." *Hardy,* 97 F.3d at 1389–90. Like subsection (a) of the All–Writs Act of 1948 (28 U.S.C. § 1651), the language of which it closely tracks, Section 105(a) is not itself an independent substantive jurisdictional grant. Rather, "[t]he basic purpose of § 1651 ... was to assure to the various federal courts the power to issue appropriate writs and orders *of an auxiliary nature in aid of their respective jurisdictions as conferred by other provisions of law.*" *In re Previn, et al.,* 204 F.2d 417, 418 (1st Cir.1953) (emphasis added); *see also Smith v. Keycorp Mortgage, Inc.,* 151 B.R. 870, 876 (N.D.Ill.1993) (Section 105 "does not of itself create a private right of action for any action contrary to the purpose of Chapter 13.").

*Cases Appended to Plaintiff's Response*

Plaintiff attaches several cases to her response purportedly in support of the

proposition that Section 524 creates a private cause of action.[4] They do not. In *Calise v. Norwest Financial Rhode Island, Inc.,* No. 4–97–CV–80823, slip op. at 2, 1998 WL 656575 (S.D.Iowa July 17, 1998), the court simply denied a Rule 12(b)(6) motion stating that "the plaintiffs may be entitled to relief if all of the pleaded facts are fully proved," *id.* slip op. at 2, while inviting a renewal of the arguments on a summary judgment motion. The court's brief decision does not indicate whether the private-right-of-action question was even raised by the parties, much less considered by the court. A well-established axiom of law is that issues implicit in a decision, but not actually addressed, have no precedential value. *Harper v. Virginia Dep't of Tax'n,* 509 U.S. 86, 118, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (quoting *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (issue not "raised in briefs or argument nor discussed in the opinion of the Court" cannot be taken as "a binding precedent on the point"); *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not considered as having been so decided as to constitute precedents"); *United States v. More,* 3 Cranch 159, 172, 2 L.Ed. 397 (1805) ("No question was made, in that case, as to the jurisdiction. It passed *sub silentio,* and the court does not consider itself as bound by that case.")).

---

**4.** Plaintiff also cites numerous other cases that she claims support this proposition. They do not. *In re Roth* stated that "[t]he sanction for failure to comply [with the admonitions of Section 524(d)(1) ] is unenforceability of the reaffirmation agreement." *In re Roth,* 38 B.R. 531, 539 (Bankr.N.D.Ill.1984). This indicates that the court contemplated an exercise of Section 105 contempt powers, not a private action for damages. The *In re Braun* court noted that "Section 524 does not contain a subsection paralleling § 362(h) [the subsection creating a private cause of action under the automatic stay provision]," but found "that § 105 empowers it to impose sanctions for violation of the discharge or-

der." *In re Braun,* 141 B.R. 133, 140 (Bankr. N.D.Ohio 1992). *In re Walker,* 180 B.R. 834, 837 (Bankr.W.D.La.1995) was a core adversary proceeding under 28 U.S.C. § 157(b)(2), and not a private action for damages. *See also In re Brantley,* 116 B.R. 443, 449 (Bankr. D.Md.1990) (same). *In re Thomas,* 184 B.R. 237, 240 (Bankr.M.D.N.C.1995), like *Walker,* was a core adversary proceeding in which the court awarded damages under its Section 105 civil contempt powers. *In re Maupin,* 165 B.R. 864 (Bankr.M.D.Tenn.1994), did not involve Section 524 at all. *In re Brown,* 211 B.R. 1020 (Bankr.S.D.Ga.1997), awarded damages under the damages provision of Section 362(h), not Section 524.

Plaintiff attaches a transcript from the *Funderburg* case. *In re Funderburg*, No. 93 B 07696, transcript of oral rulings (N.D.Ill. July, 29, 1998). From this transcript, plaintiff's reliance on the *Funderburg* seems ironic. At page 11 of the transcript, the court dismissed a claim under 524(c), noting that the plaintiff "cited no authority finding that there is an implied cause of action for violations of Section 524C."

Plaintiff's also cites *Mazola v. May Dep't Stores Co.*, No. 97–10872–NG, slip op. (D.Mass. Aug. 14, 1997). *Mazola* was apparently an action brought under the Bankruptcy Code's automatic stay provision. 11 U.S.C. § 362. Unlike Section 524, Section 362 contains a provision that expressly creates a private right of action. 11 U.S.C. § 362(h) ("An individual injured by any willful violation of a stay … shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.")

Finally, Plaintiff attaches the decision in the case of *In re Golf Group*, No. 96–22581–C–7, (Bankr.E.D.Cal. June 27, 1997) to her Response, saying that it "overrules" the *Costa* case, which was decided by the same court. The *Golf Group* court never considered whether a private right of action exists for a violation of a discharge injunction under Section 524. The court simply entered a default judgment against a creditor and awarded the sanctions and attorney's fees requested in the petition. Plaintiff's claim that *Golf Group* reverses *Costa* is specious.

## II. PLAINTIFF'S CLAIM FOR UN-JUST ENRICHMENT IS PREEMPTED

Plaintiff's state law claim for unjust enrichment should be dismissed on the grounds that it is pre-empted under the Bankruptcy Code. Congress has placed bankruptcy matters exclusively within the jurisdiction of the federal district courts of the United States. 28 U.S.C. § 1334(a). The First Circuit has noted that "[u]pon the filing of a petition under chapter 11, all property of the debtor, including intangible property such as contracts and licenses, falls within the exclusive jurisdiction of the bankruptcy court." *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440, 444 n. 3 (1st Cir.1986), (citing 11 U.S.C. § 541(a)). Likewise, the Ninth Circuit has noted that "[w]hile it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process." *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir.1996). *See also In re Walker*, 180 B.R. 834, 841–42 (Bankr.W.D.La.1995) ("In essence, section 524(a) declares that any judgment rendered on a discharged debt in any forum other than the bankruptcy court is null and void as it affects the personal liability of the debtor. Since § 524(a)(1) refers to 'any judgment at any time obtained,' it is clearly applicable to judgment obtained both before and after the discharge order."); *In re Braun*, 141 B.R. 133, 139 (Bankr.N.D.Ohio 1992) (same).

Plaintiff has cited no authority directly on point for its position that Section 524 does not preempt a state law claim for unjust enrichment. Ironically, plaintiff quotes the Tenth Circuit case of *Paul v. Monts* for the statement that "[w]here the Bankruptcy Code is silent … the rights of the parties are governed by the underlying non-bankruptcy law." *Paul v. Monts*, 906 F.2d 1468, 1475 (10th Cir.1990). (Response, p. 12.) Plaintiff's reliance on *Monts* is odd, given that the *Monts* court begins its discussion by noting that "[i]t is well established that federal bankruptcy law preempts state law … to the extent that the state law conflicts with the federal law." *Id.* at 1475. Moreover, the relied-

upon statement reinforces defendant's argument that plaintiff's unjust enrichment claim is preempted. Clearly, the Bankruptcy Code has *not* been silent on the question at hand. The whole purpose of Section 524 is to preempt creditors from pursuing state-law remedies that they would have against defaulted debtors, but for the Section's existence. Section 524 permanently readjusts, and in so doing, preempts the previously existing state-law contractual rights that existed between a debtor and the debtor's creditors prior to the discharge. Any matter that arises under Section 524 is a matter exclusively within federal bankruptcy jurisdiction.

Finally, plaintiff's conclusory dismissal of the authority defendant cites on the preemption issue in its Memorandum in Support fails to even address the preemption question. That *MSR*, for example, involved malicious prosecution instead of unjust enrichment does nothing to detract from the Ninth Circuit's careful preemption analysis. Likewise, plaintiff's one-line "analysis" of *Pereira* ("Refutation of *Pereira* is simple: the Georgia court is wrong." (Response, p. 14)) cannot be considered a meaningful attempt to undermine that court's reasoned conclusion that "the Bankruptcy Code provides the remedial scheme for addressing violations of Sections 362 and 524, including the filing of civil contempt proceedings under the bankruptcy court's inherent contempt power and Section 105.... Congress clearly intended violations of the Bankruptcy Code provisions relating to ... post-discharge injunction to be addressed in the bankruptcy court rather than in state law actions for an accounting or for unjust enrichment." *Pereira v. First North American National Bank*, 223 B.R. 28, 31–32 (N.D.Ga.1998).

## CONCLUSION

Dated: November 3, 1998

For the foregoing reasons, FCC prays that its motion be allowed and this action be dismissed.

## SUPPLEMENTAL MEMORANDUM OF FCC NATIONAL BANK IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

The Court heard argument on defendant FCC National Bank's Motion to Dismiss this action pursuant to Rule 7012 on November 5, 1998. In the course of the argument, counsel for the plaintiff made reference to two cases (*In re Rodriquez*, Bk No. 95–12267, slip op. (Bankr.April 21, 1998) and *In re Wiley*, 224 B.R. 58 (Bkrtcy.N.D.Ill.1998)) which plaintiff had not referred to in her Response in Opposition to Defendant's Motion to Dismiss ("Response"). The Court granted the defendant's request to submit this supplementary memorandum to discuss these two cases.

Plaintiff in her Response (1) failed to cite any persuasive authority supporting a private right of action by implication under Section 524; (2) did not furnish any meaningful distinctions for the cases cited by defendant that are directly on point for the contention that Section 524 does not create a private right of action; (3) and unsuccessfully argued that the test for implying a right of action set forth by the Supreme Court *Cort v. Ash* and *Touche–Ross Co. v. Redington* (Reply Brief, p. 4) does not govern this case. *Rodriquez* and *Wiley* do not alter this situation. In fact, these cases lend further support for defendant's position.

The plaintiff in *Rodriquez* filed an action which included counts alleging violations of a Section 524 discharge injunction. The defendant sought to have this Court dismiss those counts on the ground that these claims should have been asserted in a contempt proceeding and not an adversary proceeding. This Court agreed with defendant; rather than require the plaintiff to refile his claim, though, the Court adopted a practical approach by treating

these claims as if they had been asserted as a properly filed motion for contempt under Section 9020.[1]

The Court in *In re Wiley* reached the same results. Finding a violation of Section 524, the court exercised its contempt powers and imposed sanctions under Section 105(a)—not under Section 524.[2] Defendant has already conceded that a bankruptcy court may impose sanctions for violations of the discharge injunction under the provisions of Section 105. (Defendant, of course, disputes that the facts concerning plaintiff's Reaffirmation Agreement would support a finding of contempt against the defendant.) The *Wiley* decision is consistent with defendant's position, and reinforces defendant's contention that the appropriate remedial vehicle for a violation of Section 524 is a civil contempt proceeding.

Dated: November 10, 1998

---

1. At the November 5 hearing, the Court asked whether there was any practical reason for requiring a plaintiff to proceed in contempt rather than by a private right under Section 524. First, the Supreme Court held in *Cort v. Ash* and *Touche–Ross* that implied rights of action under federal statutes can only be created if they meet the rigorous test laid down in those cases. (Reply Brief, p. 4). Second, lurking in the background of this case is the practical and important question of whether plaintiff can use this case as a vehicle in which to seek to certify a national class of former debtors over a five to six year period. The plaintiff's counsel conceded at the November 5 hearing that if plaintiff cannot

maintain a private right of action under Section 524, she cannot prosecute this case as a class action.

2. In *Wiley*, the Bankruptcy Court did let the case proceed as a class action. However, defendant notes that class notice in the *Wiley* case has been delayed, pending the defendant's appeal of the decision, a hearing on which is currently set for November 23, 1998. Finally, as noted in the preceding footnote, plaintiff conceded at the November 5 hearing that if there is no private right of action under Section 524, then she cannot maintain a class action.